George PICKENS et al.,
Plaintiffs-Appellants,

v.

OKOLONA MUNICIPAL SEPARATE
SCHOOL DISTRICT et al.,
Defendants-Appellees.

No. 78–3021.

United States Court of Appeals,
Fifth Circuit.

May 3, 1979.

Rehearing and Rehearing En Banc
Denied June 22, 1979.

Alvin O. Chambliss, Jr., Leonard McClellan, North Mississippi Rural Legal Services, Oxford, Miss., for plaintiffs-appellants.

Kenneth Burns, John D. Sibley, Okolona, Miss., for defendants-appellees.

Before GEWIN, HILL and FAY, Circuit Judges.

JAMES C. HILL, Circuit Judge:

In this case we examine the propriety of a permanent injunction which forbids demonstrations within one block of the Okolona Junior-Senior High School during school hours. In the face of the appellants' claims of First Amendment foul, we recognize the District Court's authority to grant relief to Okolona's beleaguered students, teachers and officials, but we find the relief given to be overly broad. We thus modify the injunction so as to revoke its permanence and remand the case for further consideration of the breadth of other aspects of the injunction.

The original action in this case was filed in 1969 and resulted in an order which enjoined the Okolona School District from operating a dual school system and directed the establishment of a unitary school system. The schools were duly integrated, but the record reflects that the District Court's continued supervision has been required over the years in effecting and maintaining their integration. The District Court's jurisdiction was invoked in the case at hand due to racial tension which sparked a black boycott of the Okolona High School.

On Friday, September 8, 1978, a large number of black students who were disenchanted with school policies and had grievances with the administration initiated a black boycott in protest and began to demonstrate on the grounds adjacent to the school. Among the grievances which had not been addressed to their satisfaction were demands for a black history course and additional black teachers and black cheerleaders. Approximately sixty students participated in the initial walkout, and they sought to disrupt the school and force resolution of their grievances by provoking sentiment within the remainder of the black student population for a one hundred percent withdrawal. The evidence shows intimidating and threatening language and behavior on the part of those sixty students as they left school. Some of the students carried billy clubs. Following their walkout, the protesting students began to demonstrate along Winter Street,

the street in front of the school, some sixty feet away from the front of the main building. Their hostile and raucous demonstration continued during school hours through the following Thursday, September 14, 1978. Among the loud singing and chanting were threats of physical violence to administrators as well as to black students who remained in school. The demonstrators repeatedly called to black students who were inside the school building to come out and join the boycott.

By Thursday, the number of demonstrators had increased to approximately one hundred and twenty-five, about half of which were parents and other adults. Although it is undetermined how many absences were a direct result of the boycott and demonstration, there were some three hundred students, about half the total enrollment, absent from the high school and one hundred and ninety students absent from the elementary school on Thursday. At least some of the students stayed away in fear of the hostile atmosphere created by the demonstrators.

Many of those students who were in attendance were also apprehensive. At least one student was in tears by the end of the day, and others were afraid to leave the school grounds unescorted. Although the windows were closed and covered by the blinds, the shouts of the protestors permeated the classrooms and students frequently peeked through the closed blinds to see what was happening outside. The teachers were also nervous and apprehensive. It is clear that both students and teachers found it impossible to concentrate on their school work and enjoy a normal school atmosphere.

The anxiety created by the demonstrators' activities was also felt by school officials. Law enforcement officials, including twenty highway patrolmen, were dispatched to the scene in an effort to maintain order. Some arrests were made. Requests to the protestors not to block access to and egress from the school were unavailing. It was necessary to have law enforcement personnel clear Winter Street, the street in front of the school, at the close of the school day on Thursday so that students could get to their cars and buses and leave. The football team required an escort to reach the practice field.

There is every indication that the foregoing conduct and resulting disruption would have continued absent some sort of injunctive relief.[1] On September 14, 1978, after one week of rowdy and frightening demonstrations, the District Court held a hearing and granted the school officials' request for a temporary restraining order curtailing the demonstrations during school hours. The order required that the protestors conduct their demonstrations during school hours in a peaceful manner no closer than three blocks from the campus of the high school. At the subsequent evidentiary hearing on the preliminary injunction requested by the school officials, held on October 2, 1978, the District Court entered a permanent injunction forbidding demonstrations during school hours in the vicinity of the high school, but modified the spatial limitations of the temporary restraining order so that the activity is prohibited only within the area one block from the campus.[2]

1. Donald Pack, one of the adults involved in the demonstration, testified that the protesting parents had stated their intention to continue picketing as they had been until the grievances were resolved. Furthermore, counsel for the protestors indicated his belief that the disruptions accompanying the demonstrations were protected by the protestors' First Amendment rights.

2. The high school faces south. On its southern boundary, approximately sixty feet from the front of the main building, it is bordered by Winter Street. One block south of Winter Street is Washington Street. To the north of the school is the athletic field and a large City recreational area. There are no public streets to the north of the school which are within the City of Okolona. The school's eastern border is formed by School Street. Beyond School Street is a large cemetery and the next street over is Oliver Street. To the west of the school lies Highway 45. Directly adjacent to the school grounds, on the eastern side of Highway 45, is a half block area containing a store and some houses. Highway 45 is the main thoroughfare in Okolona, and one block beyond it to the west is Triplett Street.

The protestors appeal from the issuance of the permanent injunction, claiming that (1) the District Court was without jurisdiction to issue the injunction under an old 1970 desegregation order; (2) the scope of the relief granted violates the protestors' First Amendment rights; and (3) the injunction applies only to the protestors in this case, selectively excluding any other groups which might choose to demonstrate, and is, therefore, violative of the Constitution's equal protection guarantee.

## I.

■ The appellants' jurisdictional challenge is groundless. The District Court clearly had retained jurisdiction over the case under its 1970 desegregation order so as to ensure the establishment and maintenance of a unitary school system. The District Court's activity in the case during every calendar year since 1970, including requiring the submission of reports, is evidence of its retention of jurisdiction.

The appellants argue that the District Court's 1974 finding that the school system was unitary, *Pickens v. Okolona Municipal Separate School District*, 380 F.Supp. 1036 (N.D.Miss.1974), foreclosed its further exercise of jurisdiction under the 1970 desegregation order. That finding was relative, however, to the issue of whether the provisions of *Singleton v. Jackson Municipal Separate School District*, 419 F.2d 1211 (5th Cir. 1969), *cert. denied*, 396 U.S. 1032, 90 S.Ct. 612, 24 L.Ed.2d 530 (1970), applied to the failure to rehire a black faculty member. The District Court found that *Singleton's* mandate for objective standards in dismissing faculty members was inapplicable because the schools were unitary, as shown by evidence that no reduction in teaching staff became necessary because of desegregation at any time during the period under review. The District Court's resolution of the faculty employment question clearly did not en-

compass the entry of a final judgment or dismissal of the entire school case. The case was never removed from the District Court's docket. Absent such final disposition, the District Court retains jurisdiction to hear claims of interference with the maintenance of a unitary system as well as to receive reports on the system's progress. *Pate v. Dade County School Board*, 588 F.2d 501, 504 (5th Cir. 1979); *Lee v. Macon County Board of Education*, 584 F.2d 78, 82 (5th Cir. 1978).

■ The appellants seek to invoke the doctrine of "law of the case" in their jurisdictional challenge. They contend that the District Court's 1974 finding that the system was unitary, which was not reached by this Court's affirmance at 527 F.2d 358 (5th Cir. 1976), precludes reexamination of the issue in the case at hand. The doctrine of "law of the case" is firmly established, its basis being the "sound policy that when an issue is once litigated and decided, that should be the end of the matter." *United States v. United States Smelting Refining & Mining Co.*, 339 U.S. 186, 198, 70 S.Ct. 537, 544, 94 L.Ed. 750 (1950); *Morrow v. Dillard*, 580 F.2d 1284, 1290 (5th Cir. 1978). Our previous discussion of the difference between a finding of unitary status for purposes of declining to apply *Singleton* standards to a faculty termination and a finding of the establishment and maintenance of a unitary system for purposes of entering a final judgment or dismissing the entire case reveals the flaw in the appellants' reasoning. The issue of whether the situation in the Okolona school system warrants final judgment or dismissal of the original desegregation case has never been decided. The doctrine of "law of the case" is thus without effect in examining the jurisdictional question in the instant case.

The school officials, as intervenors in the original desegregation action, brought to

The injunction issued by the District Court prohibits demonstrations during school hours on the entire length of Winter Street, which extends only from School Street to Highway 45, and on those portions of School Street and Highway 45 north of their intersections with

Washington Street. The protestors are permitted by the injunction to conduct their activities no closer to the high school than Washington Street, which is about one thousand feet from the school grounds.

the District Court's attention the adverse effect of the protestors' activities on the operation and maintenance of a unitary school system. The protestors sought, by intimidation, threats, and coercion, to force all black students to cease attending Okolona's schools, whether or not they wished to continue their education. The District Court, in the scope of its continued supervision of the desegregation of Okolona's schools, properly exercised its jurisdiction to hear the merits of the claim of interference and to seek an equitable resolution of the problem. *See Augustus v. School Board of Escambia County, Florida,* 507 F.2d 152, 156 (5th Cir. 1975).

## II.

The appellants next contend that the scope of the relief granted by the District Court violates their First Amendment rights. We look first to the propriety of injunctive relief in the situation at hand and secondly to the breadth of the particular injunction issued by the District Court.

■ We are resolute in our conclusion that the District Court's grant of injunctive relief was proper, given the circumstances with which the Court was confronted. The evidence presented to the District Court established that the protestors' raucous behavior significantly interfered with the continued desegregation of the school system. The school officials were powerless to control the offending activity since the protestors were on public property adjacent to the school grounds. The Court was thus justified in entering an injunction against such future demonstrations in the vicinity of the high school during school hours. *See Augustus v. School Board of Escambia County, Florida,* 507 F.2d at 156. The injunction has the effect of prohibiting demonstrations that have been shown to be noisy, disruptive, and incompatible with normal school activities; that ban extends only to the vicinity close to the high school and is operative only during school hours. The resulting regulation of constitutionally protected speech is necessary to further a significant governmental interest, the or-

derly operation of schools, and is thus permitted by the First Amendment. *See Young v. American Mini Theatres,* 427 U.S. 50, 63 n.18, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Tinker v. Des Moines School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969); *Augustus v. School Board of Escambia County, Florida,* 507 F.2d 152 (5th Cir. 1975); *Shanley v. Northeast Independent School District, Bexar County, Texas,* 462 F.2d 960 (5th Cir. 1972); *Burnside v. Byars,* 363 F.2d 744 (5th Cir. 1966); *Blackwell v. Issaquena County Board of Education,* 363 F.2d 749 (5th Cir. 1966).

Having found that the granting of injunctive relief was proper in this case, we turn now to the breadth of the injunction issued by the District Court.

■ The appellants complain that the injunction's prohibition of demonstrations within one block of the high school during school hours banishes them from the plain view of the students and school officials, the audience they seek to reach. The closest location where they may now protest during school hours is Washington Street, which is about one thousand feet from the school grounds. The geography of the area around the Okolona High campus unfortunately does not offer a location within plain view of the school, yet removed enough to allow for demonstrations during school hours which would not disrupt the school session. Other than the three streets in close proximity to the high school, Winter Street, School Street, and Highway 45, the public thoroughfare closest to the school is Washington Street. In light of these circumstances, the District Court cannot be found to have erred by establishing the locational limitations that it did on demonstrations during school hours.

■ The District Court did err, however, in providing that such demonstrations are prohibited permanently. As we noted in *Augustus v. School Board of Escambia County, Florida* :

The federal court will relinquish jurisdiction when the remedy required by the original suit, the establishment of a unitary school system, has been fully achieved. At that time, presumably, any ancillary orders entered to aid the implementation of the court-ordered remedy should no longer be necessary. Therefore, the court order transcends that period of time over which the court should assert jurisdiction. To that extent at least, the order should be modified. Any injunction in circumstances of this kind should probably be temporary only and should be effective only so long as might be necessary to achieve the purpose of preventing the interference with the desegregation orders of the court.

507 F.2d at 158.

Further modification may be in order if the protestors propose activity, different from that engaged in during the week of September 8 through September 14, 1978, that will not disrupt the educational process in the Okolona school system.

We, therefore, direct the District Court to modify the injunction to extend only so long as does the Court's jurisdiction under its original desegregation order and to modify the injunction to allow for nondisruptive activity.

### III.

The appellants' equal protection argument, relating to the injunction's application only to them, is without merit. They are the only group shown to have disrupted the educational process. The District Court, confronted only with evidence of their disruptive behavior, rendered the injunction accordingly. Should any other group or individuals seek to disrupt the normal operation of Okolona's schools, such parties and their activities may be dealt with in another proceeding.

MODIFIED and REMANDED.