Eliseo R. VALENZUELA, et
al., Appellants,

v.

Eduardo AQUINO, et al., Appellees.

No. 13-89-494-CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 15, 1990.
Rehearings Overruled Dec. 13, 1990.

Clifford L. Zarsky, Corpus Christi, Wm. Charles Bundren, Dallas, for appellants.

Peter G. Merkl, Tony Bonilla, Sr., Frank E. Weathered, Corpus Christi, for appellees.

Before DORSEY, KENNEDY and BENAVIDES, JJ.

## OPINION

DORSEY, Justice.

This is a Freedom of Speech case. Appellees, Dr. and Mrs. Eduardo Aquino, individually and on behalf of their minor children, brought suit seeking injunctive relief and damages for negligent infliction of emotional distress arising from appellants' picketing of the Aquinos' residence. The jury found in favor of appellees and awarded $810,000.00 in actual and punitive damages. The trial court issued a permanent injunction prohibiting appellants from the further picketing of appellees' residence. Appellants raise six points of error challenging the constitutionality of the injunction, the constitutionality of the jury's damage award and the trial court's award of attorney's fees. Appellees raise one cross-point contesting the trial court's award of attorney's fees. We affirm in part and reverse and render in part.

Appellants are individuals who zealously oppose abortion and voiced their views by picketing in a public area in front of the Corpus Christi residence of Dr. Eduardo Aquino and his family. Dr. Aquino specializes in gynecology and obstetrics and, as part of his medical practice, performs abortions. On several occasions in March, 1988, appellants picketed the Aquino residence for periods ranging between one and two hours. It is undisputed that appellants' conduct was limited to the peaceful and orderly picketing of the Aquino residence. Appellants' protest was limited to the

street and sidewalk in front of the Aquino home. The picketers carried signs expressing various "pro-life" sentiments, often referring to Dr. Aquino by name.

Initially, we emphasize that appellants do not challenge the legal or factual sufficiency of the evidence supporting the jury's findings. They expressly limit their appeal to the issue of whether the United States and Texas Constitutions "protect the speech of appellants in this instance from injunctive relief and monetary damages."

## I. Injunctive Relief

■ By point of error one, appellants argue that the trial court's injunction violates the United States and Texas Constitutions. U.S. CONST. amend. I; TEX.CONST. art. I § 8. Picketing as expressive conduct is a form of speech or expression entitled to the protection of the First Amendment of the United States Constitution. *Thornhill v. Alabama,* 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940). The extent to which limitations may be imposed upon expressive conduct depends upon where the picketing occurs, namely, the forum for the expressive conduct. *Perry Education Ass'n v. Perry Local Educators' Ass'n.,* 460 U.S. 37, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). A traditional public forum includes places that, over time, have been devoted to assembly and debate. *Id.* at 954. Public streets and sidewalks are traditional public forums, and the Supreme Court has consistently upheld a demonstrator's right to use them. *See Frisby v. Schultz,* 487 U.S. 474, 108 S.Ct. 2495, 2500, 101 L.Ed.2d 420 (1988); *Perry,* 103 S.Ct. at 974. A picketer's freedom of expression, however, must be balanced against an individual's right of privacy. Individual privacy rights may be protected by reasonable time, place, and manner regulations on speech or expressive activity. *Carey v. Brown,* 447 U.S. 455, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263 (1980).

As applied to residential picketing, the Supreme Court has recognized that "a public street does not lose its status as a traditional public forum simply because it runs through a residential neighborhood."

*Frisby,* 108 S.Ct. at 2500. Hence, any regulation directed at residential picketing must be weighed against the rigorous standards established for restrictions on speech in traditional public forums. *Id.* Under this standard, restrictions regarding when, where, and how picketing may take place must be (1) content-neutral, (2) narrowly tailored to serve a significant governmental interest, and (3) open to ample alternative avenues of communication. *Id.; Perry,* 103 S.Ct. at 955.

In *Frisby,* the Supreme Court addressed the constitutionality of a city ordinance banning picketing aimed at a private residence. The ordinance was adopted following picketing in front of a doctor's residence by anti-abortion protesters. *Frisby,* 108 S.Ct. at 2497–98. The ordinance provided: "It is unlawful for any person to engage in picketing before or about the residence or dwelling of any individual in the Town of Brookfield." *Id.* at 2496. The Court construed the ordinance language "about the residence or dwelling of any individual" not to prohibit picketing in residential neighborhoods generally; rather, the ordinance only prohibits picketing directed or focused toward a particular residence. *Id.* at 2501. As such, the Court upheld the ordinance finding that it complied with reasonable time, place, and manner requirements. *Id.* at 2504.

■ While in *Frisby* the validity of an ordinance restricting picketing was in issue, we are here concerned with the propriety of an injunction prohibiting picketing within a certain distance of the residence of appellees. Although the constitutionality of an ordinance prohibiting expressive activity could be considered more questionable than an injunction directed at specific persons and places after a hearing, we find the *Frisby* analysis appropriate in our scrutiny of the constitutionality of the permanent injunction. *See United States v. Gedraitis,* 690 F.2d 351, 356 (3d Cir.1982), *cert. denied,* 460 U.S. 1071, 103 S.Ct. 1527, 75 L.Ed.2d 949 (1983) (injunction restricting picketing is permissible when narrowly tailored to serve important governmental interest); *Valenzuela v. Aquino,* 763 S.W.2d

43, 44–45 (Tex.App.—Corpus Christi 1988, no writ) (this Court recognizes that a narrowly tailored injunction may be proper to restrict residential picketing); *Klebanoff v. McMonagle*, 380 Pa.Super. 545, 552 A.2d 677, 678 (1988) (applying *Frisby* in a case involving permanent injunction of residential picketing). Similarly, in *Pickens v. Okolona Mun. Separate School Dist.*, 594 F.2d 433, 437 (5th Cir.1979), the court held that a trial court may enjoin, by way of regulation, constitutionally protected speech, when necessary to further a significant governmental interest. *Pickens*, 594 F.2d at 437. Thus, we will apply the analysis of *Frisby* to the facts of this case.

■ The first criterion delineated in *Frisby* is whether the injunction is "content-neutral." Here, the trial court's injunction mandates appellants to "[D]esist and refrain from engaging in any type of picketing within 400 feet of the center of the lot upon which [Dr. Aquino's] home is located...." A regulation may not be directed toward or proscribe the subject matter of protected speech; however, regulations restricting speech are neutral regarding content when they are directed to the secondary effects of a speaker's conduct, as opposed to the content of the speech itself. *City of Renton v. Playtime Theatres*, 475 U.S. 41, 106 S.Ct. 925, 929, 89 L.Ed.2d 29 (1986). For example, an ordinance prohibiting the use of a loud-speaker within 150 feet of an abortion clinic was found to be content-neutral regardless of the practical effect of limiting anti-abortion activists' speech. *See Medlin v. Palmer*, 874 F.2d 1085, 1090 (5th Cir.1989). Similarly, here the trial court's injunction prohibits picketing in front of Dr. Aquino's residence without referring to the subject matter of the picketing. The injunction is therefore not discriminatory in its focus and does not attempt to restrict any particular area of speech. The injunction is content-neutral.

■ The next issue is whether the injunction is narrowly tailored to serve an important governmental interest. The Supreme Court has often acknowledged the importance of preserving the sanctity of the home. *Carey*, 100 S.Ct. at 2295. In *Frisby*, the Court again stressed that "[t]he State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Frisby*, 108 S.Ct. at 2502; *Carey*, 100 S.Ct. at 2295.

■ Appellants argue that there is no state interest in enjoining their expressive activity because silent picketing does not "actually intrude" upon appellees' residential privacy. We disagree. It is not necessary for there to be a trespass or disturbance in order to intrude upon one's domestic privacy and tranquility. In *Frisby*, the Court stated in clear and unrestrained language that targeted residential picketing "inherently and offensively intrudes upon residential privacy." *Frisby*, 108 S.Ct. at 2503. The home should be a sanctuary insulated from as many external pressures as possible. Strangers parading outside, even in furtherance of protected rights about matters of public concern, tend to destroy any tranquility associated with home life. "[T]he home becomes something less of a home while picketing ... continue[s].... The tensions and pressures may be psychological ... but they are not, for that reason, less inimical to family privacy and truly domestic tranquility." *Id.* The Court finds that a resident is "figuratively and perhaps literally trapped within the home" and that "few of us would feel comfortable knowing that a stranger lurks outside our home." *Id.* We strongly agree with these sentiments and find a significant governmental interest in protecting the privacy and domestic tranquility of the home. The injunction in the instant case is narrowly tailored to serve such an interest.

■ The next question is whether the injunction provides alternative avenues of communication; because, although properly restricted, expressive conduct may not be completely suppressed even when the restriction is narrowly tailored to protect a substantial interest. Here, there are numerous alternative avenues available to appellants to disseminate their views. Appellants have on numerous occasions picketed

various locations where Dr. Aquino practices. Under the injunction, appellants are free to continue their protest at Dr. Aquino's medical clinics and at other locations in the community where he practices. The injunction's specific and limited scope allows ample alternative avenues of expression.

The injunction constitutes a content-neutral, narrowly tailored limitation on the place and manner of appellants' expressive activities and ample alternative avenues of communication exist. We overrule point of error one.

■ By point of error five, appellants argue that the trial court's injunction violates the equal protection provision of the United States Constitution because "only appellants and their speech about abortion is prohibited." Again we disagree. As discussed earlier, we find that the trial court's injunction is content-neutral and does not enjoin any specific area of speech. *See Medlin,* 874 F.2d at 1085. Moreover, in *Pickens,* the court addressed an injunction which restricted a group of parents and students from protesting in front of a public school. *Pickens,* 594 F.2d at 438. The court held that the evidence before the court issuing the injunction showed that only a limited group of individuals were disrupting the "educational process" by protesting. *Id.* The court stated that in the event other individuals should attempt to conduct themselves similarly, a separate proceeding to enjoin their conduct would be proper. *Id.* Thus, the court determined that an injunction does not offend equal protection merely because a finite group of individuals are enjoined from protesting. We find *Pickens* analogous to the instant case and hold that the trial court's injunction does not violate equal protection. We overrule point of error five.

## II. Negligent Infliction of Emotional Distress

■ By points of error two, three, and four appellants challenge the constitutionality of the jury's award of actual and punitive damages. The jury found that appellants negligently caused Dr. Aquino and his family emotional distress by picketing in a public area in front of the Aquino home. This case of first impression raises the difficult question of whether one who is not a public figure may recover damages for emotional harm negligently caused by the exercise of expressive activity protected by the First Amendment. We hold he may not and reverse the award of damages.

The tort of the negligent infliction of emotional distress was expressly recognized by the Texas Supreme Court in *St. Elizabeth Hospital v. Garrard,* 730 S.W.2d 649, 652 (Tex.1987). There, the court held "that proof of physical injury is no longer an element of the common law action for negligent infliction of mental anguish." *Id.* at 650. *Garrard* arose from the defendant hospital disposing of the corpse of a stillborn infant in an unmarked grave when the parents had instructed that an autopsy be performed. The Court recognized that "freedom from severe emotional distress is an interest which the law should serve to protect." *Id.* at 653. Although the main thrust of *Garrard*'s holding is the elimination of the requirement that an emotional injury be evidenced by some physical manifestation, the recognition of the tort of negligent infliction of emotional distress is explicit in the Court's opinion.

The submission of the instant case to the jury was on traditional negligence grounds. The jury was asked if the picketing was focused or directed towards the Aquinos' residence, whether the negligence, if any, of each defendant proximately caused mental anguish to the Aquinos, the percentage of negligence attributable to each defendant, and what damages, if any, should be awarded for mental anguish and past and future medical expenses. The jury was asked whether the conduct of the individual defendants was gross negligence, and if so what exemplary damages should be assessed against each defendant as punishment. The court defined negligence, proximate cause, and mental anguish, and instructed the jury that peaceful picketing is an expressive activity protected by the First Amendment, but speech is not abso-

lute and there are some circumstances in which it is not protected. No additional instructions delineating constitutionally protected activity from that which could give rise to liability and damages were given, nor were any sought.

The jury answered all issues favorably to the Aquinos and responded with actual damages to Dr. and Mrs. Aquino in the sum of $140,000, actual damages to their children in the amount of $170,000, and exemplary damages of $500,000.

The seminal United States Supreme Court decision in *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 108 S.Ct. 876, 99 L.Ed.2d 41 (1988), addresses the relationship between the tort of intentional infliction of emotional distress and First Amendment activity. In *Falwell*, the defendant, Hustler Magazine, published a cartoon parody of an advertisement for Campari Liqueur in which the plaintiff, Jerry Falwell, allegedly "talks about his first time." Hustler's cartoon characterizes Falwell as a drunk and implies that his first sexual encounter was in an outhouse with his mother. A jury found against Falwell on his libel claim but found that Hustler intentionally inflicted emotional distress on the plaintiff Falwell and awarded him $150,-000.00 in damages.

The Supreme Court reversed. The Court rejected Falwell's argument that First Amendment interests were adequately protected by the requirement that the speech be outrageous before recovery could be based on a cause of action for emotional distress. The Court stated that a standard based upon the "outrageousness" of speech is too subjective and would allow "a jury to impose liability on jurors' tastes or views...." *Falwell*, 108 S.Ct. at 882. Specifically, the Court held:

> [P]ublic figures and public officials may not recover for the tort of intentional infliction of emotional distress by reason of publications such as the one here at issue without showing in addition that the publication contains a false statement of fact which was made with 'actual malice,' i.e., with knowledge that the statement was false or with reckless dis-

regard as to whether or not it was true. *Id.*

The Court concluded that such a standard was necessary to provide adequate breathing room to First Amendment freedoms. *Id.*

■ The *Falwell* opinion is expressly limited to public officials and figures. Here it is undisputed that Dr. and Mrs. Aquino are individuals who have been "publicized" by the activities of appellants and other anti-abortion activists. The publicity surrounding the picketing by appellants does not change the status of the targeted person from a private person to a public figure with the resulting lessening of privacy rights. The Aquinos are not public figures. *See generally Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 3013, 41 L.Ed.2d 789 (1974).

One of the underlying principles of *Falwell* is that a plaintiff may not circumvent the protections of the First Amendment by pleading a cause of action other than defamation, such as the infliction of emotional distress. *Accord Ault v. Hustler Magazine, Inc.,* 860 F.2d 877, 880 (9th Cir.1988). Here certain First Amendment protections are implicated and an analysis of those rights with the affect that potential tort liability has on their exercise is critical to our decision.

Picketing is constitutionally protected speech. *Thornhill*, 60 S.Ct. at 736; *Frisby*, 108 S.Ct. at 2499. The subject matter of appellants' picketing concerns an issue at the heart of a current public debate, abortion. *See Frisby*, 108 S.Ct. at 2499. Picketing on matters of public concern operates at the core of the First Amendment. *Boos v. Barry*, 485 U.S. 312, 108 S.Ct. 1157, 1162, 99 L.Ed.2d 333 (1988). The First Amendment reflects a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open...." *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 720–21, 11 L.Ed.2d 686 (1964). The Supreme Court has "consistently commented on the central importance of protecting speech on public issues." *Boos*, 108 S.Ct. at 1162.

Throughout this country's history, protests by expressive activity, as well as by speech alone, have been the hallmark of a free people and a method of bringing a perceived injustice to the public's attention. The injustices of racial discrimination were brought to the sight and thus to the attention of the citizenry by peaceful demonstrations, picketing, and other expressive activity. The discomfort of one who is the object of the picketing or demonstration is a purpose of the demonstration. The distress caused by the demonstration is a natural result of the activity, and to prohibit the creation of the emotional distress without some guidelines would be improper.

■ Here, we must balance the extent to which appellants' picketing is inhibited by appellees' cause of action and the resulting award of damages for emotional distress against the state's interest in protecting its citizens from emotional distress. *See generally Arcara v. Cloud Books, Inc.*, 478 U.S. 697, 106 S.Ct. 3172, 3178, 92 L.Ed.2d 568 (1986); *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 1678–79, 20 L.Ed.2d 672 (1968); L. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12–23, at 978–79 (1988). A regulation which is entirely unrelated to the content of expression may be unconstitutional if it affords too little "breathing space" for expressive activity or effectively closes avenues of communication. *See Schneider v. New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939).

■ As applied to the instant case, the regulation or inhibition is in the award of damages for negligent infliction of emotional distress arising from protected First Amendment expression. *See New York Times*, 84 S.Ct. at 720–21 (trial court's judgment may constitute governmental regulation for First Amendment purposes). Obviously, the state interest in protecting its citizens from emotional distress does not aim at restricting or inhibiting information or ideas. However, when the application of a restriction indirectly results in limiting First Amendment expression it is subject to constitutional scrutiny. *Minneapolis Star & Tribune Co. v. Minnesota*,

460 U.S. 575, 103 S.Ct. 1365, 75 L.Ed.2d 295 (1983).

On the other hand, we acknowledge the competing state interest in protecting citizens from emotional harm. In the closely related area of defamation, the Court has recognized that private figures are more deserving of protection and recovery because they have not voluntarily become involved in a public controversy and are not in a position to influence its outcome. *Gertz*, 94 S.Ct. at 3012. The Texas Supreme Court has recognized that the State has a duty to protect its citizens from *wrongful intrusions* which are conducted "in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities." *Billings v. Atkinson*, 489 S.W.2d 858, 859 (Tex. 1973).

■ The United States Supreme Court has continually recognized that any limitation upon protected speech must be so narrowly tailored that only as little speech as is necessary may be inhibited to protect a compelling state interest. *See, e.g., Boos*, 108 S.Ct. at 1157; *Perry*, 103 S.Ct. at 955. Under the facts of the instant case, we find that the exercise of constitutionally protected picketing cannot give rise to tort liability based on negligence. The tort of negligent infliction of emotional distress is not narrowly tailored to protect a compelling state interest and has more than an incidental effect on First Amendment speech. An award of damages for negligent infliction of mental anguish arising from constitutionally protected picketing unduly restricts "uninhibited, robust, and wide-open" debate on public issues. Such an inhibition has the practical effect of virtually foreclosing an important avenue of communication. It limits to a significant degree the ease or effectiveness with which a speaker can reach his or her audience without undue fear that *someone* might find the conduct offensive or "outrageous."

The Supreme Court in *Falwell* expressly rejected the premise that restricting the cause of action only to "outrageous" speech or publications sufficiently protected First Amendment interests. *Falwell*,

108 S.Ct. at 882. We find this reasoning controlling. The Court stated that:

> "[a]n 'outrageousness' standard ... runs afoul of our longstanding refusal to allow damages to be awarded because the speech in question may have an adverse emotional impact on the audience. [T]he fact that society may find speech offensive is not a sufficient reason for suppressing it. Indeed, if it is the speaker's opinion that gives offense, that consequence is a reason for according it constitutional protection. For it is a central tenent of the First Amendment that a government must remain neutral in the marketplace of ideas. *Id.*

The Court concluded that it is well-settled that the public expression of ideas may not be restricted merely because they might be considered offensive to some. *Id.*

 Thus, we find that a State regime imposing liability for negligent infliction of emotional distress as applied to peaceful picketing severely diminishes the Constitution's protection of this fundamental liberty. The specter of protestors being subjected to unlimited liability for claims of negligent infliction of emotional distress from a contingent of unknown plaintiffs would doubtless have a stifling effect on expressive speech. Under these facts, we hold that a plaintiff may not bring a cause of action for negligent infliction of emotional distress predicated solely upon First Amendment expressive speech.[1] We find that the jury's award of damages for negligent infliction of emotional distress arising from protected expressive conduct violates the United States and Texas Constitutions. We sustain points of error two, three, and four.

### ATTORNEY FEES

 The Trial Court awarded appellants attorney fees in the amount of $1,500 against the Aquinos. Both parties challenge that award. Appellants complain of the amount awarded in the face of undisputed evidence of $50,000 being a reasonable fee. The Aquinos complain by cross-point that appellants are not entitled to any attorney fees. We address the cross-point first.

Appellants contend that they are entitled to attorney's fees under 42 U.S.C. § 1988 (1982), which provides for such fees to be awarded to the prevailing party in an action to enforce certain provisions of the Federal Civil Rights Act, 42 U.S.C. § 1983. To prevail under Section 1983, a plaintiff must prove a deprivation of a right secured by the Constitution and laws of the United States and that the deprivation was "under color of state law." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 102 S.Ct. 2744, 2755, 73 L.Ed.2d 482 (1982); *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 98 S.Ct. 1729, 1733, 56 L.Ed.2d 185 (1978); 42 U.S.C. § 1983 (1982).

Appellants seem to argue that Section 1983 is implicated because they were deprived of a right secured by the Federal Constitution—that of free speech to picket Dr. Aquino's residence—under color of state law—by a temporary injunction issued by the trial court below. That temporary injunction was later dissolved by this court in the earlier case of *Aquino*, 763 S.W.2d at 43. The temporary injunction was held to infringe upon the picketer's First Amendment rights because it was not narrowly tailored to achieve a compelling state interest. Appellants maintain that the successful appeal of the temporary injunction is the equivalent of prevailing in an action brought under Section 1983, although no action under the section was brought. We express no opinion as to this novel approach, although we note that there were no pleadings, instructions, or questions submitted to the jury regarding a Section 1983 violation. After verdict, appellants applied for an award of attorney

---

1. *See generally The Model Communicative Torts Act,* 47 Washington & Lee L.Rev. 1 (1990). The Act attempts to resolve the tension between communicative torts and the First Amendment by proposing a uniform codification which incorporates First Amendment concerns into the definitions of the torts themselves. *Id.* at 4. Section 2–101(c) of the Act suggests that tort liability for communicative conduct be limited to the extent that liability would apply to the conduct absent the communication. *Id.* at 7.

fees and the trial court granted them in the judgment.

Here the inquiry is whether the trial court's granting of the temporary injunction amounted to a deprivation of appellants' rights under the Constitution and laws of the United States and whether that the deprivation was "under color of law." Our focus will be whether there was state action under the statute.

The U.S. Supreme Court has established a two-part test for determining whether state action exists. *Lugar*, 102 S.Ct. at 2755. We initially note that the requirements for action taken "under color of state law" for Section 1983 and state action under the Fourteenth Amendment are identical. *Id.* at 2748–49. The first inquiry is whether the deprivation, the injunction, resulted from a right arising from state law. The second inquiry is whether the one acting to abridge the federal rights may be said to be a "state actor".

 The alleged deprivation must have resulted from the exercise of a right or privilege having its source in state authority. *Id.* Here, the Aquinos relied upon Texas common law and procedure in obtaining an enforceable judgment from the trial court. The injunction resulted in a deprivation of appellants' First Amendment rights. *Aquino*, 763 S.W.2d at 44–45. The trial court's issuance of the enforceable injunction satisfies the first-tier of the *Lugar* test for "color of state law."

Second, appellants must establish that under the facts of this case that the Aquinos could be characterized as "state actors." *See id.* It is well-settled that "merely resorting to the courts and being on the winning side of a lawsuit does not make a party a co-conspirator with the judge." *Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 186, 66 L.Ed.2d 185 (1980); *see also Cobb v. Georgia Power Company*, 757 F.2d 1248, 1251 (11th Cir.1985) (merely seeking and obtaining temporary restraining order is not the equivalent of "under color of state law"). The Aquinos are clearly private parties and their obtaining of a temporary injunction is not tantamount to their being "state actors." There is no evidence purporting to establish any "joint activity" between the Aquinos and the State. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 1605, 26 L.Ed.2d 142 (1970). Absent some additional evidence of "interlocking" activities with the State, the Aquinos cannot be held liable under Section 1983 for seeking and obtaining a temporary injunction under Texas law. *See Howard Gault Co. v. Texas Rural Legal Aid, Inc.*, 848 F.2d 544, 554–55 (5th Cir.1988). Thus, we find that the trial court's award of attorney's fees was improper. Appellees' cross-point of error is sustained. Given our disposition of appellees' cross-point of error we overrule appellants' sixth point of error.

We AFFIRM the trial court's judgment regarding the permanent injunction. We REVERSE and RENDER the trial court's judgment regarding the award of damages. We REVERSE and RENDER the trial court's judgment regarding the award of attorney's fees.