QUALICARE OF EAST TEXAS, INC.
and Jan Spears, Appellants,

v.

Lola B. RUNNELS and Cheryl
Dianne Neel, Appellees.

No. 11–92–083–CV.

Court of Appeals of Texas,
Eastland.

Sept. 16, 1993.

Rehearing Denied Oct. 28, 1993.

Molly H. Anderson, Mike A. Hatchell, Jack W. Flock, Tyler, Greta E. Haidinyak, Nacogdoches, for appellants.

James L. Garrett, III, Nacogdoches, for appellees.

DICKENSON, Justice.

Qualicare of East Texas, Inc. sued Lola B. Runnels and Cheryl Dianne Neel, individually and doing business as L & C Nursing Services, Inc., for conversion of personal property, breach of the fiduciary duty of loyalty, and interference with a business contract or relationship. Runnels and Neel brought a counterclaim for "intentional affliction (sic) of emotional distress" against Qualicare and Jan Spears, who was the administrator and the president of the board of directors of Qualicare. The jury entered a take-nothing judgment against Qualicare and awarded the following damages to Runnels and Neel: $25,000 each for actual damages, $10,000 each for exemplary damages against Qualicare, and $15,000 each for exemplary damages against Spears. Qualicare and Spears appeal the judgment against them. We affirm.[1]

### Points of Error

Appellants assert ten points of error. In Points of Error Nos. 1 through 4, appellants argue that there is no evidence or alternatively insufficient evidence to support the findings that: (Point 1) Qualicare intentionally inflicted emotional distress upon Runnels; (Point 2) Qualicare intentionally inflicted emotional distress upon Neel; (Point 3)

---

1. This appeal was transferred from the Tyler Court of Appeals to this court pursuant to TEX. GOV'T CODE ANN. § 73.001 (Vernon 1988).

Spears intentionally inflicted emotional distress upon Runnels; and (Point 4) Spears intentionally inflicted emotional distress upon Neel. In Point of Error No. 5, appellants argue that the trial court erred in admitting hearsay testimony. In Points of Error Nos. 6 through 10, appellants contend that the award of exemplary damages was error.

### Background Facts

Appellees had previously worked for Qualicare under the supervision of Spears. During the summer of 1989, appellees became unhappy with their jobs at Qualicare. They resigned and formed their own home health care business, L & C Nursing Services, Inc. When appellees resigned, Spears had an ugly discussion with each in which she threatened them. The first day that appellees ran an advertisement in the newspaper, they received a floral arrangement containing a black rose and three black balloons. Employees of Qualicare frequently drove through the parking lot in front of the L & C office. Appellees received "hang-up" phone calls at all hours, both at work and at home. In September, one of Qualicare's most profitable clients changed home health care agencies from Qualicare to L & C. The next month, Qualicare sued appellees.

### Sufficiency of the Evidence

In the first four points of error, appellants argue that there is no evidence, or alternatively that the evidence is insufficient, to support the awards of damages for intentional infliction of emotional distress. Specifically, appellants argue that the evidence does not show that appellants' conduct was extreme and outrageous or that the emotional distress was severe. We disagree.

■ The elements of the tort of intentional infliction of emotional distress are: (1) the defendant acted intentionally or recklessly; (2) the conduct was extreme and outrageous; (3) the actions of the defendant caused the plaintiff emotional distress; and (4) the emotional distress suffered by the plaintiff was severe. *Twyman v. Twyman*, 855 S.W.2d 619 (Tex.1993); RESTATEMENT (SECOND) OF TORTS § 46 (1965). According to *Twyman* and Section 46, Comment d, the

conduct, in order to be extreme and outrageous, must "go beyond all possible bounds of decency" and be regarded as "atrocious" and "utterly intolerable in a civilized community." Section 46, Comment d specifically states:

> The liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.

We note, however, that the illustrations following Comment d provide for situations in which practical jokes or threats may form the basis for liability.

■ Comment j to Section 46 provides that the emotional distress must be severe or extreme. Emotional distress includes "all highly unpleasant mental reactions," such as fright, humiliation, embarrassment, anger, worry, and nausea. It is for the court to determine whether severe emotional distress can be found and for the jury to determine whether it in fact existed. Section 46, Comment j.

■ In order to review appellants' no evidence points, we must consider only the evidence and inferences that tend to support the verdict and disregard any evidence or inferences to the contrary. If there is any evidence of probative force to support the verdict, the no evidence points must be overruled. *Juliette Fowler Homes, Inc. v. Welch Associates, Inc.*, 793 S.W.2d 660 at 666 (Tex. 1990); *In re King's Estate*, 244 S.W.2d 660 (Tex.1951). In order to review appellants' insufficient evidence points, we must review all of the evidence and determine whether the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175 (Tex.1986); *In re King's Estate*, supra.

■ The record shows that the evidence was disputed. The evidence supporting the findings includes testimony from both appellees and testimony from Patti Joe Jackson, Sharon K. Houser, Jill Polanck, Sharion Day, and Neel's husband concerning threats, surveillance, hang-up phone calls, and the black floral arrangement. Runnels and other nurses formerly employed by Qualicare also testi-

fied that, in order for Qualicare to receive Medicare reimbursement, Spears instructed them to forge names, change nurses' notes, and change patients' records to indicate that a skilled need was necessary when it was not. These witnesses testified that they were afraid they were going to lose their nursing licenses if they continued working for Qualicare. Runnels testified that, during the one to one-and-a-half hour argument that occurred at the office when Runnels resigned, Spears "totally degraded" her and threatened to "have [her] in a peer review in Austin" to review her nursing license.

Neel was the financial officer at Qualicare, and she was supposed to be in control of all the finances. Neel testified that part of the reason she resigned was that she was afraid that Spears was embezzling money. Spears would not allow Neel to see the bank statements, but Neel would have been held responsible if there had been an audit. Neel testified that, after she resigned, Spears called her and:

> [Spears] said it didn't matter where I went in the community to find work, she would ruin me. She would call any employer I went to work for and have me fired, that she had set me up and *she would quote get me and that I had better watch my back always, watch my children always.* There were several threats to the point that my husband and I for two years now feared to even let our children play in the front yard. (Emphasis added)

Neel's husband overheard part of this phone call, and he testified that Spears said that she would follow Neel around the community and ruin her name and that she would definitely "get her."

Runnels, Neel, and Day testified that Spears sent the black floral arrangement to L & C. Although the evidence was controverted, Neel testified that she was told by Kelly Greeny Kolb that Spears sent the arrangement and that she had paid cash for it. Appellees understood the arrangement to be a death threat.

Runnels, Neel, Jackson, and Polanck testified concerning the surveillance of L & C. Various employees of Qualicare frequently drove through the parking lot at L & C.

Although Polanck testified that she had heard of the surveillance, she did not think it was planned. Neel testified that Durina Lewis Brooks Casper and Kolb apologized to her for all the harassment that they had participated in while employed for Qualicare. The surveillance ceased when appellees filed their counterclaim.

Runnels and Neel also testified that they received frequent "hang-up" phone calls at the office and at their homes. These phone calls began the day that the black floral arrangement was sent, and they continued until the day of trial. Polanck testified that, while at a restaurant with other employees of Qualicare, either Spears or Casper placed a phone call to Runnels' beeper and that it "was a joke."

Runnels and Neel both testified that they suffered severe emotional distress and stress and that they were terribly upset by the threats, the hang-up phone calls, the surveillance, and the black floral arrangement. Neel testified that the harassment made her paranoid about her family and that her migraine headaches became debilitating. Runnels testified that she was angered by Spears' actions and that her blood pressure increased dramatically.

Spears denied the allegations against her, and there was other testimony favorable to appellants; however, the jury was the trier of fact and the sole judge of the credibility of the witnesses and the weight to be given their testimony. We hold that there was some evidence to support the jury's findings and that the evidence, taken as a whole, was sufficient to show that the findings were not clearly wrong or manifestly unjust. See *American Medical International, Inc. v. Giurintano*, 821 S.W.2d 331 at 343 (Tex.App.— Houston [14th Dist.] 1991, no writ). Appellants' Points of Error Nos. 1 through 4 are overruled.

### Hearsay

In their fifth point of error, appellants assert that the trial court erred in admitting the "double hearsay" testimony of Day. Day testified that her hairdresser, Valencia Basinger, told her that Flora Nell

Basinger, Valencia's mother, had told Valencia that Spears sent the black floral arrangement and that Spears was responsible for the surveillance. After Valencia Basinger, who was appellees' first witness, denied that she had made those statements to Day, appellees called Day to impeach her. Appellees assert that the testimony was an admissible statement of a party opponent (because Flora Basinger was an officer at Qualicare) and was admissible as a prior inconsistent statement to impeach Valencia Basinger. We agree that the trial court abused its discretion in admitting the double hearsay because it appears that Valencia Basinger was "called solely for the purpose of later impeachment by the use of otherwise inadmissible hearsay." *Truco Properties, Inc. v. Charlton,* 749 S.W.2d 893 at 896 (Tex.App.—Texarkana 1988, writ den'd). However, the error in admitting this testimony was not reversible error under TEX.R.APP.P. 81(b)(1) because there was other evidence that Spears was responsible for the black floral arrangement and the surveillance. Appellant's fifth point of error is overruled.

### *Exemplary Damages*

In their last five points of error, appellants argue that the award of exemplary damages was error. In Points of Error Nos. 6 and 7, appellants argue that there is no evidence, and in the alternative that there is insufficient evidence, to support the jury's award of exemplary damages against Qualicare and Spears because the only proof of conduct that could provide a basis for exemplary damages is the same conduct that provided the basis for the actual damages. Appellants argue that a greater degree of culpability is required in order for exemplary damages to be proper.

■■■■ The purpose of exemplary damages is to punish the wrongdoer; to deter similar actions in the future; and to compensate the complainant for remote losses, inconvenience, and attorney's fees. *Hofer v. Lavender,* 679 S.W.2d 470 (Tex.1984). Exemplary damages may be awarded when a distinct, willful tort is alleged and proved and when actual damages are awarded. *Nabours v. Longview Savings & Loan Association,*

700 S.W.2d 901 (Tex.1985). Exemplary damages are, therefore, proper in cases awarding actual damages for intentional infliction of emotional distress. See, e.g., *American Medical International, Inc. v. Giurintano,* supra; *Tidelands Automobile Club v. Walters,* 699 S.W.2d 939 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). Appellants' Points of Error Nos. 6 and 7 are overruled.

In Point of Error No. 8, appellants argue that the exemplary damages are excessive in that they allow for a double recovery and impose a double punishment for the same conduct. Appellants argue that Qualicare's liability is based entirely upon the conduct of Spears and that, for Spears to be liable individually for exemplary damages, the record must contain evidence that her conduct outside the course and scope of her employment amounts to a separate and independent tort. Appellants assert that there is no evidence of such an independent tort and that, therefore, the exemplary damages grant a double recovery by punishing each appellant separately for the same act. We disagree.

■■■■ Appellants do not dispute that Spears was the "vice-principal," "administrator," and "president of the board of directors" of Qualicare or that Spears was acting in the scope of her employment when the tortious acts were committed; consequently, Qualicare is liable for Spears' tortious acts. Spears is also individually liable for the tortious acts that she committed while in the course and scope of her employment and for the exemplary damages imposed for those wrongful acts. See *Duval County Ranch Company v. Wooldridge,* 674 S.W.2d 332 at 337 (Tex.App.—Austin 1984, no writ); see also *Leyendecker & Associates, Inc. v. Wechter,* 683 S.W.2d 369 at 375 (Tex.1984); *Dennis v. Dial Finance & Thrift Company,* 401 S.W.2d 803 (Tex.1966). Thus, the award of exemplary damages against each appellant is proper and does not impose a double punishment. Moreover, the exemplary damages are reasonably proportioned to the actual damages and are not excessive. See *Alamo National Bank v. Kraus,* 616 S.W.2d 908 (Tex.1981). Appellants' eighth point of error is overruled.

In Points of Error Nos. 9 and 10, appellants assert that the award of exemplary damages denied Qualicare and Spears the rights to "due process" under the 14th amendment to the federal constitution and to "due course of law" under the Texas Constitution. Appellants attack both the procedural parameters of the Texas exemplary damage system per se and the manner in which the exemplary damage issue was submitted and reviewed in this case. However, appellants have waived these contentions because appellants also requested and received exemplary damage questions and because appellants did not object at trial to the jury charge or to the underlying evidence. See TEX. R.CIV.P. 274; TEX.R.APP.P. 52(a); *Davis v. Campbell,* 572 S.W.2d 660 (Tex.1978). Moreover, neither the charge given [2] nor the Texas exemplary damage system violates appellants' rights to due process as set out in *Pacific Mutual Life Insurance Company v. Haslip,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), or their rights to due course of law. See *Texas Farmers Insurance Company v. Soriano,* 844 S.W.2d 808 (Tex.App.—San Antonio 1992, writ filed); *Prudential Insurance Company of America v. Jefferson Associates, Ltd.,* 839 S.W.2d 866 (Tex.App.—Austin 1992, writ granted); *Texas Employers Insurance Association v. Puckett,* 822 S.W.2d 133 (Tex.App.—Houston [1st Dist.] 1991, writ den'd). Appellants' Points of Error Nos. 9 and 10 are overruled.

The judgment of the trial court is affirmed.

---

**2.** The jury charge provides:

"Exemplary damages" means an amount you may in your discretion award as an example to others, as a penalty or by way of punishment, in addition to any compensatory damages awarded. You may include at your discretion the following elements when considering and awarding exemplary damages:

(1) compensation for inconvenience;
(2) attorney's fees;
(3) expense of litigation;
(4) other expenses too remote to be considered as actual damages.