**Herbert W. CARR and Gertrudis M. Carr, Appellants,**

v.

**MOBILE VIDEO TAPES, INC., d/b/a KRGV–TV5 and Humane Society of the Upper Valley, Appellees.**

No. 13–93–080–CV.

Court of Appeals of Texas, Corpus Christi.

Dec. 22, 1994.

Rehearing Overruled Feb. 2, 1995.

Peter W. Koelling, Koelling & Koelling, Robert P. Stecher, San Antonio, for appellants.

Ofelia De Los Santos, Israel Ramon, Jr., Marcel C. Notzon, III, Ramon & Cantu, William M. Mills, Atlas & Hall, McAllen, for appellees.

Before SEERDEN, C.J., and KENNEDY and DORSEY, JJ.

## OPINION

SEERDEN, Chief Justice.

This is an appeal from a summary judgment. In the underlying action, Herbert and Gertrudis Carr sued Mobile Video Tapes, Inc., d/b/a KRGV–TV5, the Humane Society of the Upper Valley, and Peter Stout, an investigator for the Humane Society. The Carrs pleaded causes of action involving civil conspiracy, malicious prosecution, defamation and false-light invasion of privacy, infliction of emotional distress, invasion of privacy, and trespass. After conducting a hearing and finding no genuine issues of material fact as to each of the Carrs' claims, the trial court granted the defendants' motions for summary judgment. We reverse and remand in part and affirm in part.

The Carrs' appeal raises eight points of error. Their first point argues that unresolved fact issues preclude summary judgment in favor of the Humane Society and Stout on the claim of malicious prosecution. The Carrs' second and third points assert that their defamation claim against KRGV–TV5 was neither barred by the statute of limitations nor disposed of by KRGV–TV5's summary judgment proof. In their fourth point of error, the Carrs complain that none of the defendants conclusively disproved that the defendants placed Herbert Carr in a false light. The Carrs' fifth and sixth points contend that their cause of action alleging the infliction of emotional distress was correctly pleaded and that disputed fact issues prevent summary judgment. In their final two points of error, the Carrs maintain that the court erred in granting summary judgment on their claims for invasion of privacy and trespass because fact issues remain unsettled. The Carrs do not contest the summary disposition of their civil-conspiracy claim.

## FACTS

In the spring of 1989, Stout received an anonymous telephone call regarding the apparent poor health of horses kept in a pasture south of Alamo, in Hidalgo County. In his dual capacity as an investigator for the Humane Society and an animal control officer, Stout investigated the allegation. Stout recognized this pasture as the Carrs' ranch because Herbert Carr had previously invited Stout to the ranch. Over one year before the incidents that resulted in this suit, Carr had contacted the Humane Society because Carr was concerned about a possible chemical contamination of the water supply to the pasture.

Of the forty-five horses Stout examined, several were malnourished and near death; the horses had resorted to eating the bark off the huisache trees growing in the pasture. Additionally, the horses' hooves appeared cracked, further suggesting that the horses were not properly cared for. Based on his conclusion that these conditions indicated cruelty to animals, Stout submitted a sworn complaint and corroborating photographs to the Hidalgo County Sheriff.

While the court issued a warrant for the arrest of Herbert Carr based on Stout's affidavit and photographs, the Humane Society contacted KRGV–TV5. Stout and an employee of KRGV–TV5 then met at the Carr pasture. After receiving permission from an employee of the Carrs, the KRGV–TV5 employee filmed the horses for a story to be aired that evening.

Before broadcasting the story, another employee of KRGV–TV5 called the sheriff's office for an update. The KRGV–TV5 employee was incorrectly told that Carr had not yet been arrested, and KRGV–TV5 ran the following story on their evening news broadcast:

An arrest warrant is out tonight for yet another person charged with cruelty to animals. It was earlier this week when we reported a former state representative had

been arrested on the same charge after he had neglected to feed his horses. This time an Alamo man, who owns forty-five horses kept at a ranch south of the city, has allegedly committed the same crime. In fact, one of Dr. Herbert Carr's horses died as we were taking pictures of the animals today. Seven others have died recently, thirty-eight were discovered to be undernourished. Some even had cuts and bruises. Upper Valley Humane Society officials say the public is more aware of these type of situations and are helping out by reporting the crime. Stout adds that if anyone has any information leading to the arrest of those who are neglecting their animals, you're asked to contact the Humane Society. In the meantime, the search continues tonight for Dr. Herbert Carr, the owner of these horses kept south of Alamo.

Carr claims that this story was rebroadcast over one month later, but KRGV–TV5 denies this.

The charges against Carr were subsequently dismissed, and the Carrs filed the underlying lawsuit. After the trial court granted summary judgment for each defendant, the Carrs perfected this eight-point appeal.

## STANDARD OF REVIEW

■ On appeal, the appellees' burden demands that we resolve each doubt and indulge all reasonable inferences in favor of the Carrs while accepting evidence against summary disposition as true. *See Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985); *Argonaut Ins. Co. v. Allstate Ins. Co.*, 869 S.W.2d 537, 537 (Tex. App.—Corpus Christi 1993, writ denied). Reviewing the summary judgment evidence in this light, we must determine whether the appellees have disposed of every fact issue necessary to rebut at least one element from each of the Carrs' claims. *See Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex. 1970); *Benavides v. Moore*, 848 S.W.2d 190, 195 (Tex.App.—Corpus Christi 1992, writ denied).

## MALICIOUS PROSECUTION

■ To prevail on their claim for malicious prosecution, the Carrs must show, among other things, that no probable cause justified the initiation of criminal proceedings against Carr. *Ellis County State Bank v. Keever*, 888 S.W.2d 790, 793–94 (1994) (opinion on reh'g); *Akin v. Dahl*, 661 S.W.2d 917, 920 (Tex.1983), *cert. denied*, 466 U.S. 938, 104 S.Ct. 1911, 80 L.Ed.2d 460 (1984); *Browning–Ferris Indus. v. Zavaleta*, 827 S.W.2d 336, 338 (Tex.App.—Corpus Christi 1991, writ denied). Both Stout's sworn complaint and his affidavit in support of summary judgment recite sufficient facts and circumstances to excite a reasonable belief that Carr was guilty of cruelty to animals. *See Akin*, 661 S.W.2d at 921 (defining probable cause in the context of a malicious prosecution suit); *accord Zavaleta*, 827 S.W.2d at 345–46 (noting that jury's inquiry should nonetheless focus on whether defendant actually believed those facts that would excite belief in a reasonable mind); *cf. Cross v. State*, 646 S.W.2d 514 (Tex.App.—Dallas 1982, pet. ref'd) (discussing similar facts under cruelty-to-animals provision, Tex.Penal Code Ann. § 42.11(a)(2) (Vernon 1989)). The motion for summary judgment also includes an affidavit from Judge Garces, who issued the warrant for Carr's arrest. In his affidavit, Judge Garces states that he reviewed Stout's complaint and accompanying photographs and independently found probable cause to initiate criminal proceedings against Carr.

The Carrs suggest, however, that the horses' sickly and malnourished condition resulted from the contaminated water that Stout had investigated over a year before Stout filed complaint. The Carrs therefore argue that Stout's undisclosed prior knowledge of a possible chemical run-off into the water supply to the pasture precludes conclusive resolution of the probable-cause issue. In support of this argument, the Carrs quote from *Diamond Shamrock Corp. v. Ortiz*, 753 S.W.2d 238 (Tex.App.—Corpus Christi 1988, writ denied):

[Defendants of malicious-prosecution claims] generally have a duty to make a full and fair disclosure of all evidence to

the police and a failure to make material exculpatory information known to the police could be evidence of a hostile motive or insufficient grounds.

*Id.* at 241 (citation omitted). The Carrs contend that their prior concern about the possible chemical run off was "material exculpatory information" that Stout should have made known. In the instant case, summary judgment would be inappropriate if this contention of the Carrs' is correct because they could then rely on Stout's omission as evidence of insufficient grounds. *Id.; see also Akin,* 661 S.W.2d at 920 (trier of fact must resolve probable-cause issue when facts are in controversy).

Significantly, most of the circumstances that led Stout to conclude that there were indications of cruelty to animals cannot be accounted for by contaminated water. In addition to the horses' ill-fed appearance, the complaint mentions the cracked hooves of the horses and a lack of appropriate shelter. Although Stout's complaint did not mention the possibility of a chemical run-off into the water supply, this omission is immaterial to the incriminating indicia that cannot have resulted from the water.

Regarding the horses' malnutrition, evidence that Carr knew of a contaminant in the water supply and nonetheless failed to take any remedial action for over a year is not exculpatory. Moreover, Stout's sworn complaint did mention that he had previously examined the horses. On his return to the Carrs' pasture, Stout found that the condition of the horses had significantly deteriorated in the year or more since his investigation of the possible contamination: "About a year and a half ago I came to this same pasture and all the horses were thin then, but they were malnourished now." A reasonable mind would therefore discount the possible contamination as a sufficient cause of the horses' malnutrition. Furthermore, the complaint states that the overgrazed condition of the pasture confirmed that the horses had not been adequately fed.

Consequently, the complaint's omission of Carr's previous concern about contaminants in the water supply is largely immaterial and not exculpatory where it might be material.

Except in regard to this omission, the Carrs do not attack the honest and reasonable nature of Stout's understanding of the disputed circumstances.

Significantly, probable cause would lie in Stout's actual and reasonable perception of the facts and not the objective truth of those facts. *Closs v. Goose Creek Consol. Indep. Sch. Dist.,* 874 S.W.2d 859, 877 (Tex.App.— Texarkana 1994, n.w.h.); *Coniglio v. Snyder,* 756 S.W.2d 743, 744 (Tex.App.—Corpus Christi 1988, writ denied). We agree with the Carrs that their affidavits controvert certain facts from Stout's affidavit and complaint. But the Carrs have failed to controvert evidence that Stout acted on his actual and reasonable belief when he filed the cruelty-to-animals complaint against Carr. The Carrs expressly concede, for example, that the horses had eaten the bark off the huisache trees in the pasture and that several of the horses looked severely malnourished. Accordingly, we affirm the trial court's summary judgment in favor of Stout and the Humane Society on the Carr's claim of malicious prosecution.

## DEFAMATION

■ In their second and third points of error, the Carrs question the propriety of the summary judgment of their defamation cause of action. We must affirm the trial court's judgment in favor of KRGV–TV5 if the television station demonstrated that their broadcast was substantially true. *McIlvain v. Jacobs,* 794 S.W.2d 14, 15 (Tex.1990); *Crites v. Mullins,* 697 S.W.2d 715, 717 (Tex.App.— Corpus Christi 1985, writ ref'd n.r.e.). We determine the substantial truth of a broadcast as a matter of law when the facts underlying "the gist of the defamatory charge are undisputed." *McIlvain,* 794 S.W.2d at 16; *see also Crites,* 697 S.W.2d at 717–18.

■ In the aspect of the broadcast that concerned Carr, KRGV–TV5 reported the following assertions as facts:

(1) An arrest warrant for Carr remained outstanding at the time of the broadcast;

(2) Carr had been charged with cruelty to animals in the wake of a similar charge

against a former state representative who had neglected to feed his horses;

(3) Carr owns forty-five horses that he keeps at a ranch south of the Alamo;

(4) One of Carr's horses died while the KRGV–TV5 reporter was filming the horses;

(5) Seven other horses owned by Carr had died within a short time before the charges were brought against Carr;

(6) Thirty-eight other horses owned by Carr were found to be undernourished;

(7) Some horses owned by Carr were found to have cuts and bruises; and

(8) At the time of the broadcast, the police were searching for Carr.

The Carrs challenge assertions one and eight as demonstrably false, do not contest the truth of two through five, and question the fairness of the characterizations in six and seven.

When assessing the substantial truth of the broadcast, we must determine whether the average listener would have found the facts that KRGV–TV5 reported more ignominious than the actual facts. *See McIlvain,* 794 S.W.2d at 16. Because KRGV–TV5's report might convey the incorrect impression that Carr had avoided arrest, we cannot say that the average viewer would consider the truth less or equally damaging to Carr's reputation. Consequently, we cannot conclude that KRGV–TV5's broadcast was substantially true as a matter of law.

 Regarding the television station's initial broadcast, however, the statute of limitations had expired by the time the Carrs amended their petition to name KRGV–TV5 as a party to the suit. *See* Tex.R.Civ.Prac. & Rem.Code Ann. § 16.002 (Vernon 1986) (setting statute of limitations at one year from date cause of action accrues); *Salazar v. Amigos Del Valle, Inc.,* 754 S.W.2d 410, 412 (Tex.App.—Corpus Christi 1988, no writ) (cause accrues and statute of limitations begins to run on date of communication). But the Carrs offered the affidavits of three persons who testified that KRGV–TV5 rebroadcast the story more than one month after the initial airing.

Such a rebroadcast would raise a separate cause of action that would not be barred by the statute of limitations. *Langston v. Eagle Pub. Co.,* 719 S.W.2d 612, 624 (Tex.App.— Waco 1986, writ ref'd n.r.e.). KRGV–TV5 has not met the burden of proving as a matter of law that they did not rebroadcast the report or that any such rebroadcast would have occurred more than one year before KRGV–TV5 was sued. As a result, KRGV–TV5 cannot urge the statute of limitations as a bar to any aspect of the Carrs' defamation claim that relates to the disputed rebroadcast. *See Rogers v. Ricane Enters., Inc.,* 772 S.W.2d 76, 80–81 (Tex.1989); *Zale Corp. v. Rosenbaum,* 520 S.W.2d 889, 891 (Tex.1975) (per curiam); *Felan v. Ramos,* 857 S.W.2d 113, 116 (Tex.App.—Corpus Christi 1993, writ denied); *Salazar,* 754 S.W.2d at 412.

Furthermore, we need not address KRGV– TV5's arguments about the care they exercised in ascertaining the truth of the facts they inaccurately reported. Regarding the first broadcast, we dispose of the Carrs' claim without reaching the argument that KRGV–TV5 was not negligent in initially researching the story. And because KRGV– TV5's proof of the care they exercised before airing the story pertains only to their preparation for the first broadcast, these arguments do not bear on the alleged rebroadcast.

 Finally, the Carrs offer no argument and cite no authority for any theory under which Gertrudis Carr might urge an independent claim for defamation or recover under her husband's claim. Because the Carrs have not shown any indication of physical injury to Herbert Carr, loss of consortium is not recoverable. *Browning–Ferris Indus. v. Lieck,* 881 S.W.2d 288, 294–95 (Tex. 1994). When KRGV–TV5 established its entitlement to summary judgment on Gertrudis Carr's defamation claim, the Carrs became obliged to raise a fact issue that would preclude summary judgment. *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–80 (Tex.1979); *Diehl v. Rocky Mountain Communications, Inc.,* 818 S.W.2d 183, 184 (Tex.App.—Corpus Christi 1991, writ de-

nied). The Carrs have failed to raise such a fact issue.

Accordingly, we must affirm the summary judgment of Gertrudis Carr's claim. In respect to the initial broadcast of the KRGV–TV5 story about Carr, we also affirm the trial court's disposition of Herbert Carr's cause of action. Regarding the alleged rebroadcast of the report, however, we reverse this aspect of the summary judgment and remand that part of Herbert Carr's claim for further proceedings.

## FALSE LIGHT

 Texas does not recognize a separate cause of action, distinct from defamation, for publicizing information in a manner that places a person in an offensive and false light. *Cain v. Hearst Corp.*, 878 S.W.2d 577, 579 (Tex.1994) (opinion on certified question). Accordingly, we overrule the Carrs' fourth point of error without further discussion. Tex.R.App.P. 90(a).

## INTENTIONAL AND NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

 In their fifth and sixth points of error, the Carrs contend that their claims for the infliction of emotional distress were correctly pleaded and that fact issues remain in dispute. We first note that the trial court specifically based its grant of summary judgment on the absence of unresolved material fact issues rather than on any defect in the Carrs' pleadings. As a result, we cannot review the trial court's judgment as if a putative error in the Carrs' pleadings served as grounds for summary judgment. *State Farm Fire & Casualty Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993) (per J. Hightower with JJ. Doggett, Gammage, and Spector concurring and C.J. Phillips concurring in result). Without prejudicing KRGV–TV5's right to argue this point on remand, we therefore decline to address the Carrs' sixth point of error. *See Id.; see also Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 698–99 (Tex. 1994) (discussing summary judgment of emotional-distress claim properly based on deficiencies of plaintiff's pleadings).

To prevail on their cause of action alleging the intentional infliction of emotional distress, the Carrs would have to show that the conduct of the defendants was extreme and outrageous. *Twyman v. Twyman*, 855 S.W.2d 619, 621 (Tex.1993). The court must "determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery." *Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex.1993) (quoting Restatement (Second) of Torts § 46, cmt. h (1965)).

 As applied to Stout and the Humane Society, the Carrs employ their malicious-prosecution claim as a basis for their cause of action alleging the intentional infliction of emotional distress. But we concluded above that Stout filed the criminal complaint only after gathering sufficient facts to excite the belief in a reasonable mind that Carr was guilty of cruelty to animals. "The interest of society," the supreme court recently wrote, "requires that private persons who aid in the enforcement of the law should be given an effective protection." *Lieck*, 881 S.W.2d at 290 (quoting Restatement (Second) of Torts ch. 29, topic 6, intro. note at 405 (1977)); *see also Ellis County State Bank*, 888 S.W.2d at 793 (discussing the importance of assuring "protection to citizens who report criminal activity").

In light of the Humane Society and Stout's vindication on the issue of malicious prosecution, we must consider these societal interests when evaluating Stout's conduct. In the context of the instant suit, we cannot even compare Stout's action in filing the complaint against Carr to conduct that has been found sufficiently extreme and outrageous to permit recovery. *Cf., e.g., Qualicare of East Texas, Inc. v. Runnels*, 863 S.W.2d 220, 222–23 (Tex.App.—Eastland 1993, n.w.h.) (threats to jeopardize plaintiff's professional license because plaintiff refused to falsify documents plus threats of violence directed at plaintiff and plaintiff's children plus persistent harassing phone calls and deliveries are sufficient); *Motsenbocker v. Potts*, 863 S.W.2d 126, 130–34 (Tex.App.—Dallas 1993, n.w.h.) (purchasing business and hiring terminally ill former owner and then effectively eliminating negotiated health-care benefits for termi-

nally ill former owner is sufficient); *LaCoure v. LaCoure*, 820 S.W.2d 228, 233 (Tex.App.—El Paso 1991, writ denied) (falsifying documents to evict plaintiff plus threats of violence to encourage plaintiff to abandon suit are sufficient).

To justify the Carrs' recovery, Stout's conduct must exceed "all possible bounds of decency" and involve actions universally "regarded as atrocious, and utterly intolerable." *Garcia v. Andrews*, 867 S.W.2d 409, 412 (Tex.App.—Corpus Christi 1993, n.w.h.) (citing *Wornick*, 856 S.W.2d at 734, which quotes Restatement (Second) of Torts § 46, cmt. d (1965)). Even if we concede that Stout's complaint against Carr was based on Stout's honest misunderstanding of the facts, we cannot agree with the Carrs' contention that his actions exceeded all bounds of decency. As a result, we overrule the Carrs' fifth point of error as it applies to Stout and the Humane Society and affirm this aspect of the trial court's summary judgment.

■ Similarly, we must consider the societal interest in protecting freedom of the press when determining whether KRGV–TV5's conduct was of an outrageous and extreme nature. *Cf. Hustler Magazine v. Falwell*, 485 U.S. 46, 50–57, 108 S.Ct. 876, 879–82, 99 L.Ed.2d 41 (1988) (considering intentional infliction of emotional distress but limiting its holding to public-figure as plaintiffs); *Valenzuela v. Aquino*, 800 S.W.2d 301, 307 (Tex.App.—Corpus Christi 1990), *rev'd in part on other grounds*, 853 S.W.2d 512 (Tex. 1993) ("plaintiff may not circumvent the protections of the First Amendment by pleading a cause of action ... such as the infliction of emotional distress"). In light of this deference, we conclude that KRGV–TV5's conduct in preparing and initially broadcasting the story about Carr cannot be reasonably regarded as outrageous.

The television station admits that it mistakenly reported that Carr remained at large when Carr had in fact already been arrested and released on his own recognizance. The broadcast was incorrect only in this assertion that the arrest warrant for Carr was outstanding at the time of the broadcast; the report was not otherwise affirmatively wrong. Significantly, KRGV–TV5 made a reasonable effort to ascertain the truth of the report before the evening broadcast by calling the sheriff's office to determine whether Carr had been arrested. The mistake that marred the television station's report originated with the sheriff's office. Accordingly, we affirm the trial court's summary judgment of the Carr's claim for the intentional infliction of emotional distress in relation to the first broadcast of the report about Carr.

■ Whether KRGV–TV5 rebroadcast this story remains to be determined. For the purposes of this appeal, however, we must resolve such doubts in favor of the Carrs and assume that the report was rebroadcast. *See Nixon*, 690 S.W.2d at 548–49; *Argonaut Ins.*, 869 S.W.2d at 537. Although we do not consider the initial error outrageous, we cannot say that all reasonable persons would necessarily agree that rebroadcast of the same erroneous statement is equally tolerable. Because of this uncertainty, the jury must determine whether KRGV–TV5 acted outrageously in failing to correct the inaccuracy in the report before rebroadcasting the story over one month later. *See Tarleton State Univ. v. Rosiere*, 867 S.W.2d 948, 952 (Tex.App.—Eastland 1993, writ dism'd by agr.) (discussing when nature of conduct should be determined by jury). We therefore reverse the trial court's summary judgment of the Carrs' claim for the intentional infliction of emotional distress as it applies to KRGV–TV5's alleged rebroadcast.

■ The Carrs' claim for the negligent infliction of emotional distress is not an independent cause of action but, in effect, a request for mental anguish damages rising from another claim. *Boyles v. Kerr*, 855 S.W.2d 593, 594–97 (Tex.1993). Such damages might be appropriate, for example, within the context of the remaining aspects of Herbert Carrs' defamation claim. *See, e.g., Leyendecker & Assocs. v. Wechter*, 683 S.W.2d 369, 374 (Tex.1984); *see also Perez v. Kirk & Carrigan*, 822 S.W.2d 261, 267 (Tex. App.—Corpus Christi 1991, writ denied) (damages for mental anguish may be appropriate in invasion-of-privacy suit, citing *Billings v. Atkinson*, 489 S.W.2d 858, 861 (Tex. 1973)). Because damages are not an aspect

of this appeal from summary judgment, we need not further discuss the negligent infliction of emotional distress.

## INVASION OF PRIVACY

In their seventh point of error, the Carrs contend that the court erred in granting summary judgment on their claim for the invasion of privacy. The Carrs pleadings do not specify whether they are complaining that private information about them has been wrongfully publicized or that their right to be left alone has been violated. *See generally Industrial Found. of the South v. Texas Indus. Accident Bd.*, 540 S.W.2d 668 (Tex. 1976), *cert. denied*, 430 U.S. 931, 97 S.Ct. 1550, 51 L.Ed.2d 774 (1977) (recognizing freedom from public disclosure of embarrassing private facts); *Billings*, 489 S.W.2d 858 (recognizing right to be left alone); *Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612 (Tex.App.—Corpus Christi 1992, writ denied) (discussing all recognized theories of recovery for invasion of privacy); *Wilhite v. H.E. Butt Co.*, 812 S.W.2d 1 (Tex.App.—Corpus Christi 1991, no writ) (comparing various invasions of privacy).

▇ To prevail on their claim for the wrongful disclosure of private matters, the Carrs must show, among other things, that the facts publicized were not of legitimate public concern. *Industrial Found.*, 540 S.W.2d at 682; *Anonsen v. Donahue*, 857 S.W.2d 700, 703 (Tex.App.—Houston [1st Dist.] 1993, writ denied), *cert. denied*, —— U.S. ——, 114 S.Ct. 2135, 128 L.Ed.2d 865 (1994); *McNamara v. Freedom Newspapers, Inc.*, 802 S.W.2d 901, 903–04 (Tex.App.—Corpus Christi 1991, writ denied). The validity of the public concern for the incident reported is well illustrated within the report: "Upper Valley Humane Society officials say the public is more aware of these type of situations and are helping out by reporting the crime." Because the story about Carr reported on an issue of legitimate public interest, the Carrs cannot recover on a cause of action alleging the wrongful disclosure of private matters.

▇ The cause of action for violating the right to be left alone includes two elements: (1) invasion of another's solitude or private affairs by an intentional intrusion (2) of a highly offensive nature. *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex.1993); *Gill v. Snow*, 644 S.W.2d 222, 224 (Tex.App.—Fort Worth 1982, no writ); *see also Farrington v. Sysco Food Servs., Inc.*, 865 S.W.2d 247, 253 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (same criteria expressed as three elements). *But cf. Thomas v. Allsip*, 836 S.W.2d 825, 828 (Tex.App.—Tyler 1992, no writ) (interpreting *Billings*, 489 S.W.2d at 859, as further requiring that intrusion be substantial). When assessing the offensive nature of an invasion, courts further require that the intrusion be unwarranted. *Billings*, 489 S.W.2d at 860; *Farrington*, 865 S.W.2d at 253; *Gonzales v. Southwestern Bell Telephone Co.*, 555 S.W.2d 219, 221 (Tex.Civ. App.—Corpus Christi 1977, no writ).

▇ Generally, the gravity of the allegations against Carr and the immediate danger to Carr's horses warrant some degree of intrusion into the Carrs' affairs. But the Carrs controvert the evidence that Stout or the Humane Society attempted to contact Carr in regard to his horses. Significantly, neither Stout nor the Humane Society offer sufficient justification for not even attempting to contact the Carrs before investigating the anonymous allegations of cruelty. Stout and the Humane Society may ultimately demonstrate that Stout's actions were completely justified. On review of the record before us, however, we cannot say that Stout's intrusion was unobjectionable as a matter of law. *Cf. Trevino v. Southwestern Bell Telephone Co.*, 582 S.W.2d 582, 584 (Tex. Civ.App.—Corpus Christi 1979, no writ) (by failing to first obtain permission, company invaded plaintiff's privacy by entering property to reclaim defective phones); *Gonzales*, 555 S.W.2d 219, 221–22 (by failing to first obtain permission, company invaded plaintiffs' privacy by entering property to reclaim phones for which no deposit was paid).

Similarly, a news-media defendant should enjoy some measure of deference in an invasion-of-privacy action with ramifications that might menace liberties secured by the First Amendment. But KRGV–TV5 has failed to address the Carrs' claim for invasion of pri-

vacy as a violation of their right to be left alone. Because KRGV–TV5 has not attacked this facet of the Carrs' cause of action, we must reverse the trial court's summary judgment as it might apply to this portion of the Carrs' claim. *Black v. Victoria Lloyds Ins. Co.,* 797 S.W.2d 20, 27 (Tex.1990); *Hartford Casualty Ins. Co. v. Walker County Agency, Inc.,* 808 S.W.2d 681, 688 (Tex.App.—Corpus Christi 1991, no writ).

Consequently, we reverse the summary judgment of the Carrs' cause of action for the violation of their right to be left alone. We further note that both Herbert and Gertrudis Carr may pursue this cause of action. *Cf. Gonzales,* 555 S.W.2d 219, 222–23 (as co-owners of the house, both husband and wife were violated). Conversely, we affirm the trial court's summary judgment on the aspect of the Carrs' invasion-of-privacy cause of action that can be read as a claim for the public disclosure of private matters.

### TRESPASS

None of the appellees challenge the Carrs' dominion over the pasture where the horses were kept. Consequently, we need only determine whether the appellees have proved as a matter of law that their entry into the pasture was authorized or otherwise privileged. *See Stone Resources, Inc. v. Barnett,* 661 S.W.2d 148, 151 (Tex.App.—Houston [1st Dist.] 1983, no writ); *Rowland v. City of Corpus Christi,* 620 S.W.2d 930, 933–934 (Tex.Civ.App.—Corpus Christi 1981, writ ref'd n.r.e.).

■ We agree with the appellees that apparent consent to enter the property is sufficient to defeat the cause of action for trespass. *See Nixon v. Sipes,* 667 S.W.2d 223, 224 (Tex.App.—Texarkana 1984, writ ref'd n.r.e.); *Rowland,* 620 S.W.2d at 933–934. Nonetheless, summary judgment is inappropriate unless the appellees have proved that they received the apparent consent of someone acting with the authority of the land owner. *Chumchal v. Natural Gas Pipeline Co. of Am.,* 381 S.W.2d 690, 691 (Tex.Civ.App.—Corpus Christi 1964, no writ); *see also Armintor v. Community Hosp. of Brazosport,* 659 S.W.2d 86, 90 (Tex.App.—Houston [14th Dist.] 1983, no writ) (trespass cannot be defeated by permission to enter premises from someone without authority to grant permission).

■ KRGV–TV5 has only defended against the Carrs' cause of action for trespass by arguing that an employee of the Carrs' granted actual or apparent permission to enter the pasture and film the horses. Because KRGV–TV5 has not addressed the disputed issue of the Carr employee's authority to permit access to the pasture, summary judgment in favor of KRGV–TV5 on this claim was premature.

Stout and the Humane Society present an argument parallel to KRGV–TV5's contention, which we cannot accept. In addition, Stout and the Humane Society assert that Stout entered the pasture with consent of the Carrs and, further, that the entry was privileged.

■ The proposition that Stout entered into Carrs' pasture with their consent is founded on Herbert Carr's prior invitation to Stout. Over one year before the alleged trespass, Carr invited the Humane Society to his ranch to investigate a possible contamination of the water supply to the pasture. Neither Stout nor the Humane Society adduced evidence to conclusively establish that Carr's invitation was unlimited in scope or duration, and Carr insists that the invitation was not unlimited. Summary judgment is therefore inappropriate under this theory of consent.

■ Finally, Stout and the Humane Society contend that members of the Humane Society enjoy a limited privilege to enter a property to investigate the condition of animals maintained on that property. Stout and the Humane Society argue that when cruelty to animals is apparent from evidence within view from a public road, members of the Humane Society may enter the property to further investigate. In support of this proposition, Stout and the Humane Society quote from *McCall v. State,* 540 S.W.2d 717 (Tex. Crim.App.1976):

Appellant kept the dogs in an open field clearly in view of neighbors and passersby. If it was apparent that the animals were not being properly cared for in possible

violation of the law, it was not unreasonable to go onto the property and seize them and the introduction into evidence of photographs of the animals was not error. *Id.* at 720–21.

Although *McCall* was a criminal prosecution for cruelty to animals and did not involve the issue now before us, we find the reasoning underlying the *McCall* decision somewhat persuasive. Nonetheless, the reasonable nature of Stout's trespass in this case is better considered within the framework of the established defense of necessity rather than by the creation of a new privilege. *Cf. Rosalez v. State,* 875 S.W.2d 705, 714–17 (Tex.App.—Dallas 1993, pet. ref'd) (in context of criminal trespass, discussing advantages of necessity defense over creation of a privilege); *Buffalo Marine Serv., Inc. v. Monteau,* 761 S.W.2d 416, 420 (Tex.App.—Houston [14th Dist.] 1988, no writ) (discussing necessity as a defense to trespass). Without prejudicing Stout and the Humane Society's right to reargue their proposed privilege as a necessity defense, we sustain the Carr's final point of error. Accordingly, we reverse the trial court's summary judgment of the Carrs' claim for trespass and remand this cause of action for further proceedings.

### CONCLUSION

In summary, we reverse and remand the summary judgment of Herbert Carr's claim against KRGV–TV5 for defamation and for the intentional infliction of emotional distress, but only as they regard the alleged rebroadcast. We also reverse and remand both of the Carrs' claims against all appellees for the invasion of the Carrs' right to be left alone and for trespass. In all other respects, we affirm the trial court's summary judgment.

DORSEY, J., concurs and dissents.

DORSEY, Justice, concurring and dissenting.

I join in the Court's opinion and judgment except for the portions addressing invasion of privacy and trespass. I dissent from the judgment of the court and its conclusions as to those two matters. I would affirm the

judgment of the court below that the Carrs take nothing against all appellees for trespass and "the right to be left alone."