**Opinion filed January 16, 2025**



In The

# Eleventh Court of Appeals

_____

## No. 11-22-00343-CV

_____

### REMNANT ASSETS, LLC, Appellant

### V.

### PERMICO ROYALTIES, LLC; PARKCREST MINERALS, LLC; AND DAVID B. ROEMER, Appellees

**On Appeal from the 118th District Court**

**Glasscock County, Texas**

**Trial Court Cause No. 1789**

## M E M O R A N D U M   O P I N I O N

On August 8, 2024, we issued our original opinion and judgment in this appeal. Since that time, Appellant Remnant Assets, LLC has filed a motion for rehearing. Among other things, Remnant's motion for rehearing indicates that our initial memorandum opinion failed to address their argument that summary judgment was improper in connection with Appellees' claims to title. We withdraw

our opinion and judgment of August 8, 2024, and the following is now the opinion of this Court. We overrule Remnant's motion for rehearing.

This is an appeal from a summary judgment entered in a receivership proceeding. Remnant is a successor-in-interest to Hubert Hoffman, a con man who plied his trade in real estate fraud during the Texas/Oklahoma oil boom. In November 1930, a federal grand jury sitting in Fort Worth indicted Hoffman for mail fraud. He was later convicted on all counts. According to the indictment, Hoffman had told his victims that he was the owner of Mid-Tex Corporation, a company that held a series of mineral interests in Glasscock County. In this case, we are called on to determine whether Hoffman's ninety-year-old claim to ownership of Mid-Tex was valid, or whether, in the words of counsel for Appellee Permico Royalties, LLC, Hoffman still "beguiles . . . with his self-proclaimed appellations" from beyond the grave.

Remnant brings five issues challenging the trial court's summary judgment. We affirm.

*Background Facts*

Mid-Tex was formed in the 1920s. Its corporate charter named Paul DeMotte as a director. The charter also indicated that DeMotte was an initial subscriber to the company's capital stock. The charter did not list Hoffman as a managing officer, nor did it list him as an owner. The charter for Mid-Tex was eventually forfeited in May 1950.

In 1983, the Honorable Timothy Yeats, the former judge of the 118th District Court, while he was in private practice, was appointed as an attorney ad litem to represent the former owners of Mid-Tex, including DeMotte, in a receivership action in Howard County. As a result of the receivership, a mineral lease was executed for the benefit of the owners of the property.

2

In 2016, Vermillion Cliffs Partners, LLC filed a petition seeking a receivership on a property located in Glasscock County. In the petition, Vermilion Cliffs listed Mid-Tex, among others, as an owner of the property. Judge Yeats, who was then the presiding judge of the 118th District Court, heard the petition and signed an order approving the sale.

Four years later, Appellees Parkcrest Minerals, LLC and David Roemer (the DeMotte successors) intervened in the Glasscock County receivership, claiming that 48.4% of Mid-Tex had been owned by DeMotte, and that they were successors-in-interest to DeMotte. The trial court set the petition in intervention for hearing, but, according to the certificate of service, the ad litem for the receivers did not receive notice of the hearing. Likewise, the ad litem did not attend the hearing.

Following the hearing, Judge Yeats entered an order declaring that Parkcrest and Roemer were successors-in-interest to DeMotte's share of Mid-Tex and awarded them payment of a portion of the proceeds that had accumulated in the court registry.

Thereafter, in June 2021, Diana Gardiner and Remnant filed a petition in the receivership, claiming that they were successors-in-interest to Hoffman.[1] They asked the trial court to determine that Hoffman was the owner of Mid-Tex. Gardiner and Remnant also named Permico as a defendant, alleging that Permico was wrongfully asserting an adverse ownership interest in Mid-Tex.

On March 21, 2022, the Honorable George D. Gilles was assigned to take over the case from Judge Yeats. The parties filed competing motions for summary judgment. After a hearing, Judge Gilles determined that Hoffman had not been an

---

[1]The petition was initially filed by Gardiner and Remnant in the name of Mid-Tex. However, Gardiner and Remnant amended the petition to name themselves individually after Permico filed a plea to the jurisdiction that argued that Mid-Tex had forfeited its charter.

3

owner of Mid-Tex and granted summary judgment in favor of Permico, Roemer, and Parkcrest. Remnant appealed.[2]

*Analysis*

*Permico's Objections to the Summary Judgment Evidence*

In its fourth issue, Remnant complains that the trial court erred in sustaining Permico's objections to several exhibits that were included as a part of its summary judgment evidence.[3] We review the trial court's grant of summary judgment de novo. *Lujan v. Navistar, Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (citing *Provident Life& Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)). However, a trial court's decision to exclude or admit summary judgment evidence is reviewed for an abuse of discretion. *Id.* (citing *Starwood Mgmt., LLC v. Swaim*, 530 S.W.3d 673, 678 (Tex. 2017)). An abuse of discretion exists only when the trial court's decision is made without reference to any guiding rules and principles. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 132 (Tex. 2012). "An appellate court must uphold the trial court's evidentiary ruling if there is any legitimate basis for the ruling." *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

A number of Permico's objections are based on hearsay. "Hearsay" is a statement that the declarant does not make while testifying at the current trial or hearing that is offered to prove the truth of the matter asserted in the statement. TEX. R. EVID. 801(d). In the absence of an exception to this rule, hearsay is inadmissible. TEX. R. EVID. 802. Furthermore, "[w]hen part of a document contains hearsay and part of it is admissible, the objection should point out the statements

---

[2]Gardiner is not a party to the appeal.

[3]Gardiner and Remnant offered evidence in both their motion for summary judgment and their response to Permico's motion for summary judgment. For the most part, the evidence attached to each document is identical. As such, we address the objections to the evidence from the motion and the response simultaneously.

claimed to be hearsay and specifically object to those statements." *Gen. Motors Corp. v. Harper*, 61 S.W.3d 118, 126 (Tex. App.—Eastland 2001, pet. denied) (citing *Brown & Root v. Haddad*, 180 S.W.2d 339, 342 (Tex. 1944)). However, an objection will also be sufficient to preserve error if the substance of the objection is apparent from the context. TEX. R. EVID. 103(a)(2).

Exhibit No. 6 appears to be the cover to a book entitled "Easy Money: Oil Promotors and Investors in the Jazz Age." The clerk's record does not contain any other text or photographs from this book. Likewise, the clerk of the trial court has informed us that the text of Exhibit No. 6 is not contained in the clerk's file.

In Remnant's motion for summary judgment, as well as its response to Permico's motion for summary judgment, Remnant repeatedly cites to the contents of Exhibit No. 6, claiming that it documents the sordid history of Hoffman's fraudulent schemes, leading up to his indictment in 1930. Permico objected to Exhibit No. 6 on the grounds that it was both hearsay and "hearsay within hearsay," and the trial court granted the objection.

At oral argument, we informed the parties that the contents of Exhibit No. 6 are missing from the appellate record, but none of the parties have supplemented the record with the contents of the book. Permico bears the burden of bringing forward a record to support its claim that the trial court has committed harmful error. *See Enter. Leasing Co. of Houston v. Barrios*, 156 S.W.3d 547, 549 (Tex. 2004) (party complaining of error bore the burden to bring forward the summary judgment record). Because the text of Exhibit No. 6 is missing from the record, we presume that the omitted evidence supports the trial court's judgment. *Id.* at 550; *see also DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 689 (Tex. 1990). Accordingly, we conclude that the trial court did not abuse its discretion when it sustained Permico's objections to Exhibit No. 6.

Exhibit No. 7 is a printout of a web page providing historical information about a company called Hoffman Oil & Refining Corporation. It does not mention Mid-Tex. The document indicates that Hoffman attempted to float millions of dollars of stock on a company with limited assets. Among other things, Permico objected to Exhibit No. 7 as "hearsay, and hearsay within hearsay."

Remnant complains that Permico's objection is insufficient because it does not specify the portions of the document that contain hearsay. In support of this argument, Remnant points to *Columbia Rio Grande Reg'l Hosp. v. Stover*, 17 S.W.3d 387 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.). In *Columbia*, a summary judgment movant relied on a judgment from another lawsuit, together with the transcript of several hearings from the same lawsuit, to support a claim of res judicata. *Id.* at 396 & n.8. The respondent objected to the judgment and transcripts as hearsay. *Id.* at 396. The Thirteenth Court of Appeals held that the objections were insufficient because they "were not specific enough to reasonably apprise [the nonmovant] or the court of its complaint." *Id.*; *see also Williams v. Conroe Indep. Sch. Dist.*, 809 S.W.2d 954, 957 (Tex. App.—Beaumont 1991, no writ) (concluding that "hearsay within hearsay" objections to hearing transcript and deposition were insufficient because they did not specifically identify defects in the transcripts).

In this case, the document in question is a printout of a web page that is offered to prove the truth of the matters described within the document. Under such circumstances, the entire document is inadmissible hearsay. TEX. R. EVID. 801(d), 802. By contrast, it appears that the documents in *Columbia Rio Grande* contained some statements that were not necessarily hearsay. *See* 17 S.W.3d at 396 n.8. While we agree with the Thirteenth Court of Appeals that specific objections must be made to documents containing both hearsay and non-hearsay statements, such a practice

is unnecessary when objecting to a document as a whole.[4] *See Harper*, 61 S.W.3d at 126 ("*When part of a document contains hearsay and part of it is admissible*, the objection should point out the statements claimed to be hearsay and specifically object to those statements." (emphasis added)). As such, we conclude that the trial court did not err in sustaining Permico's hearsay objection to Exhibit No. 7.

Exhibit Nos. 21 and 23–25 appear to be newspaper articles from the mid-twentieth century. However, aside from the headlines, these exhibits are mostly illegible. Among other things, Permico objected to these exhibits as hearsay, as unauthenticated, and as "illegible."

Rule 803(16) of the Texas Rules of Evidence provides that the hearsay rule does not apply to documents that are at least twenty years old. TEX. R. EVID. 803(16). However, the person offering the documents must still establish their authenticity. *Id.* Remnant failed to authenticate the newspaper articles in question.[5] For example, Remnant did not file an affidavit demonstrating that the articles satisfy the requirements of Rule 901(8).[6] Additionally, much of the information on the

---

[4]Permico's "hearsay within hearsay" objection is a different issue, since some of the statements within Exhibit No. 7 are not necessarily double-hearsay. *See Qualicare of E. Tex., Inc. v. Runnels*, 863 S.W.2d 220, 223–24 (Tex. App.—Eastland 1993, no writ) (describing hearsay-within-hearsay testimony as "double hearsay"). Because we have concluded that Permico's hearsay objection was sufficient, we do not reach the question of whether Permico's "hearsay within hearsay" objection was sufficiently specific.

[5]Remnant attached affidavits from Blake Bergstrom and Joshua Vance to its response to Permico's motion for summary judgment. Each affidavit indicated that the documents attached to the motion are originals, certified copies, or true and correct copies of the originals. However, the affidavits do not demonstrate the manner in which the witnesses gained knowledge of the original contents of the newspaper articles in question. While documents can often be authenticated by a fact witness with knowledge of the document, these affidavits are not sufficient to authenticate newspaper articles that are more than eighty years old. *See* TEX. R. EVID. 901(b)(1) (authentication may be made by a witness with knowledge that an item is what it is claimed to be).

[6]Rule 901(8) provides that a document that is more than twenty years old may be authenticated by evidence that it is in a condition that creates no suspicion about its authenticity and was in a place where it would likely appear if it were authentic.

exhibits cannot be read, and it is therefore impossible to determine whether they are relevant to the issues in this case. *See* TEX. R. EVID. 402. Accordingly, the trial court did not err in concluding that the newspaper articles were inadmissible.

Exhibit No. 22 contains data from the internet about Paul DeMotte that was obtained in the 1930 United States census. It establishes a few details about DeMotte's background, indicating that he lived in Fort Worth in 1930. The first page is a summary of the contents of the second page insofar as it concerns DeMotte. Permico objected to Exhibit No. 22 because, among other things, it was unauthenticated.

Exhibit No. 22 does not include any certification or other indication that it is a true and correct copy of a public record.[7] Accordingly, it is unauthenticated, and the trial court did not err in granting Permico's objection to Exhibit No. 22. *See* TEX. R. EVID. 901(a).

Remnant also complains that the trial court erred when it sustained objections to the affidavits of Brian Coker and Diana Gardiner.[8] Among other things, Permico objected to each of these affidavits on the grounds that they fail to establish that the witnesses have personal knowledge of the facts stated in the affidavit.

Coker's affidavit attempts to verify that all copies of discovery and documents attached to the motion are accurate originals, certified copies, or copies of the originals. Coker indicates that he has "personal knowledge of the facts [therein]

---

[7]The Bergstrom and Vance affidavits attempt to authenticate Exhibit No. 22. However, such affidavits do not demonstrate that Exhibit No. 22 is a public record as it purports to be, nor do they otherwise state the manner in which they became familiar with its origins. *See* TEX. R. EVID. 901(b); TEX. R. CIV. P. 166a(e).

[8]Each of these affidavits are listed as evidence in support of the motion and the response, as Exhibit Nos. 30 and 33 respectively. However, neither affidavit contains an evidence identification tag. Coker's affidavit is attached to the Hoffman successors' motion for summary judgment but does not appear in their response to the DeMotte successors' motion. Conversely, Gardiner's affidavit is attached to the response, but does not appear in the motion.

stated and they are all true and correct." However, he does not indicate how he acquired knowledge regarding the contents of any of the remaining thirty-three documents that are attached to the motion.

Gardiner's affidavit attempts to verify that "the facts stated in the [motion and her affidavit] are true and correct." Gardiner also does not indicate how she acquired knowledge regarding any of the dozens of factual statements that are set out in the response. For example, she does not explain how she gained personal knowledge of the factual allegation that Hoffman "had an entire lifetime of operating scams in the oil business and was well known for using various entities and trusts to shield his identity and to maintain his anonymity." In fact, it would be unusual for her to possess such knowledge since she was not living at the time of the events in question, and therefore was not present when Hoffman was implementing the fraudulent schemes that are alleged in the motion and response.

A summary judgment affidavit must be "made on personal knowledge" and must also "show affirmatively that the affiant is competent to testify to the matters stated therein." TEX. R. CIV. P. 166a(f). Thus, when an affidavit fails to describe the basis on which the witness obtained knowledge of the facts on which the affidavit is based, it is insufficient. *See Kerlin v. Arias*, 274 S.W.3d 666, 668 (Tex. 2008) ("nothing in the affidavit affirmatively shows how Castillo could possibly have personal knowledge about events occurring in the 1840s"); *see also Radio Station KSCS v. Jennings*, 750 S.W.2d 760, 762 (Tex. 1988); *First Nat. Bank in Munday v. Lubbock Feeders, L.P.*, 183 S.W.3d 875, 881 (Tex. App.—Eastland 2006, pet. denied) ("Summary judgment affidavits must set forth facts and show affirmatively how the affiant obtained personal knowledge of those facts."); *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 669 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Sewell v. City of Odessa*, No. 11-19-00121-CV, 2021 WL 1706913, at *4 (Tex.

App.—Eastland Apr. 30, 2021, no pet.) (mem. op.) ("An affidavit is insufficient if it does not show a basis for the witness's personal knowledge."). Accordingly, the trial court did not abuse its discretion when it sustained Permico's objections that the Coker and Gardiner affidavits were not made on personal knowledge.

We conclude that the trial court did not abuse its discretion in sustaining Permico's objections to the evidence and affidavits that are the subject of Remnant's complaints on appeal. Accordingly, we overrule Remnant's fourth issue.

*Res Judicata and Collateral Estoppel*

In its second issue, Remnant argues that the trial court erred by granting summary judgment in favor of the DeMotte successors based on the doctrines of res judicata and collateral estoppel.

"[R]es judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments." *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992). "Within this general doctrine there are two principal categories: (1) claim preclusion (also known are res judicata); and (2) issue preclusion (also known as collateral estoppel)." *Id.*

In their motion for summary judgment, the DeMotte successors maintained that, because the trial court had determined that they were the successors-in-interest to Mid-Tex in the Glasscock County receivership proceedings, Remnant was barred from relitigating the issue.

To support a defense of res judicata, a party must show "(1) a prior final determination on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action." *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010); *see also Eagle Oil & Gas Co. v. TRO-*

10

*X, L.P.*, 619 S.W.3d 699, 705–06 (Tex. 2021); *Duncan v. Hindy*, 590 S.W.3d 713, 720 (Tex. App.—Eastland 2019, pet. denied).

Remnant maintains that, because the trial court's prior judgment awarding title to the DeMotte successors was not a "final determination," the DeMotte successors have failed to satisfy the first element.

As a general rule, only one final judgment may be rendered in any single case. TEX. R. CIV. P. 301; *see also Matter of Guardianship of Jones*, 629 S.W.3d 921, 924 (Tex. 2021) (discussion of guardianship exception to "one final judgment" rule). However, receivership proceedings are not like ordinary lawsuits "in which the issues may be drawn by the pleadings as soon as discovery is complete, and then promptly tried to a final judgment." *Hill v. Hill*, 460 S.W.3d 751, 763 (Tex. App.—Dallas 2015, pet. denied) (quoting *Bergeron v. Session*, 554 S.W.2d 771, 774–75 (Tex. Civ. App.—Dallas 1977, no writ)). For that reason, discrete orders in receivership proceedings constitute an exception to this rule. *Mitchell v. Turbine Res. Unlimited, Inc.*, 523 S.W.3d 189, 196 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *Hill*, 460 S.W.3d at 763.

When determining whether a receivership order is final, Texas courts often look to the rules which govern the finality of judgments in probate proceedings. *See Huston v. F.D.I.C.*, 800 S.W.2d 845, 848 (Tex. 1990). Probate orders are considered interlocutory when "there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of." *Crowson v. Wakeham*, 897 S.W.2d 779, 783 (Tex. 1995). Thus, an order that "actually disposes of all issues and parties at the relevant stage of the proceedings is final." *Guardianship of Jones*, 629 S.W.3d at 925.

Remnant argues that the order awarding partial ownership of Mid-Tex to the DeMotte successors was not final because it failed to identify the remaining successors who were owners of Mid-Tex. In support of this argument, Remnant points to the holding in *Crowson*, a probate case. In *Crowson*, the supreme court determined that, because the trial court's order failed to dispose of the heirship rights of all of the intervenors therein, it was interlocutory. 897 S.W.2d at 782–83. Remnant also points to several other cases in which a judgment was found to be interlocutory because the trial court did not dispose of all existing and related claims in its judgment. *See In re Estate of Willett*, 211 S.W.3d 364, 367 (Tex. App.—San Antonio 2006, no pet.) (partial judgment which expressly indicated that it was setting several remaining claims for trial was not final); *Matter of Estate of Ethridge*, No.11-16-00004-CV, 2016 WL 7177736, at *2 (Tex. App.—Eastland Dec. 8, 2016, no pet.) (mem. op.) (order that had the effect of denying a request to dismiss did not "end a stage of the proceedings" and was not appealable); *Asafi v. Rauscher*, No. 14-09-00800-CV, 2009 WL 4346067, at *2 (Tex. App.—Houston [14th Dist.] Dec. 3, 2009, pet. denied) (partial summary judgment regarding the status of a party as the common-law wife of decedent was not final because the parties had pled multiple other issues, which were interrelated and had not yet been resolved).

In this case, the pleadings that were filed by the DeMotte successors did not request a determination of all remaining successors to Mid-Tex. Instead, they sought confirmation of their particular interest in the property, together with a corresponding partial termination of the receivership. This request for relief was granted in the trial court's subsequent order. Unlike the other cases that are cited by Remnant, there were no longer any pending requests for relief after the trial court rendered its judgment. Additionally, unlike the situation in *Crowson*, there was no need to dispose of the interests of then-existing parties to the proceeding. 897

12

S.W.2d at 782–83. Accordingly, we conclude that the trial court rendered a final judgment to the DeMotte successors.

Remnant also maintains that, because it was neither a party nor in privity with any party to the receivership, the DeMotte successors have failed to satisfy the second element. This assertion is correct.

"Parties may be in privity if (1) they 'control an action,' (2) 'their interests can be represented by a party to the action,' or (3) they are 'successors in interest.'" *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 225 (Tex. 2022) (quoting *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 653 (Tex. 1996)).

Remnant was not in control of the DeMotte successors' action at the time the former judgment was rendered. Likewise, the parties maintain that they hold adverse interests in Mid-Tex. As such, Remnant is clearly not a successor-in-interest to anyone that was a party to the DeMotte successors' action. Furthermore, although privity is sometimes available where a party to the former judgment "represented" the interests of a current party, a finding of such privity must not operate to offend the Fourteenth Amendment rights of the current party. *Lee v. Rogers Agency*, 517 S.W.3d 137, 155 (Tex. App.—Texarkana 2016, pet. denied) (citing *Richards v. Jefferson Cty., Ala.*, 517 U.S. 793, 794 (1996) ("[I]t would violate the Due Process Clause of the Fourteenth Amendment to bind litigants to a judgment rendered in an earlier litigation to which they were not parties and in which they were not adequately represented.")).

The DeMotte successors argue that, when they brought an action to determine their interests in Mid-Tex, they "represented" the same interest that Remnant now pursues because all of the parties derive their claims from Mid-Tex. However, this interpretation would effectively deprive Remnant of its rights to due process under the Fourteenth Amendment. *See Lee*, 517 S.W.3d at 155. Remnant's "interest" in

13

the dispute is not merely based on an allegation that Mid-Tex owned the mineral rights at issue up until its point of dissolution. It is also based on the claim that Hoffman was the true owner of the company. The DeMotte successors' claim that they are the owners of Mid-Tex necessarily excludes the possibility of Remant's ownership. As such, the DeMotte successors did not "represent" Remnant's interest at the time they sought a declaration of their interests.

We are also unconvinced that the two stages of the receivership proceeding that are involved in this dispute relate to the "same claims." *See Travelers*, 315 S.W.3d at 862. The resolution of this case turns on two distinct questions: (1) whether Mid-Tex was the owner of the mineral interests at issue and (2) whether DeMotte or Hoffman owned Mid-Tex. The first question has never been in dispute and the second question was not at issue when the trial court ruled on the DeMotte successors' petition. Accordingly, we conclude that the DeMotte successors have failed to demonstrate that the current dispute is based on the "same claims" that were at issue when the trial court resolved the DeMotte successors' petition. *See Travelers*, 315 S.W.3d at 862.

To support a defense of collateral estoppel, the DeMotte successors must show that "(1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action." *Eagle Props., Ltd. v. Scharbauer*, 807 S.W.2d 714, 721 (Tex. 1990) (quoting *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex. 1984)); *Caprock Inv. Corp. v. Montgomery*, 321 S.W.3d 91, 97 (Tex. App.—Eastland 2010, pet. denied). Like res judicata, collateral estoppel may also be applied when the party to the second action is in privity with a party to the first action. *Eagle Props.*, 807 S.W.2d at 721. For the reasons that are articulated above, we conclude that the present dispute involves

14

different facts that were not essential to the previous judgment, and that the parties were not in privity.

Because the DeMotte successors have failed to raise a genuine issue of material fact with respect to their affirmative defenses of res judicata and collateral estoppel, we sustain Remnant's second issue. However, the second issue is not dispositive of this appeal. In that regard, there were other bases upon which the trial court's summary judgment was based.

*The Initial DeMotte Order*

Remnant's fifth issue urges us to reverse the trial court's initial order awarding ownership of Mid-Tex to the DeMotte successors on the grounds that it is constitutionally defective. Remnant offers four arguments in support of this issue, none of which appear to have been raised in the trial court.

A. *Was Judge Yeats Disqualified to Render Judgment?*

First, Remnant maintains that Judge Yeats was disqualified to render the receivership order.

Article V, Section 11 of the Texas constitution provides that a judge should not sit in a case where the judge "shall have been counsel *in the case*" (emphasis added). Unlike statutory rules for disqualification, which may be waived, a constitutional ground for disqualification of a judge is mandatory. *Fry v. Tucker*, 202 S.W.2d 218, 221 (Tex. 1947); *Tex. Emp. Comm'n v. Alvarez*, 915 S.W.2d 161, 165 (Tex. App.—Corpus Christi–Edinburg 1996, no writ). As such, a judge that is disqualified on constitutional grounds has no jurisdiction to render judgment, and any judgment rendered by the disqualified judge is void. *Fry*, 202 S.W.2d at 221; *Alvarez*, 915 S.W.2d at 165; *see Tesco Am., Inc. v. Strong Indus., Inc.*, 221 S.W.3d 550, 555 (Tex. 2006) ("any orders or judgments rendered by a trial judge who is constitutionally disqualified are void and without effect").

15

In this instance, Judge Yeats served as an attorney ad litem in the 1983 receivership in Howard County, representing the interests of the owners of Mid-Tex, including DeMotte. As such, we must determine whether Judge Yeats's involvement in the 1983 Howard County receivership makes him "counsel in the case" for purposes of Article V, Section 11 of the Texas constitution.

We construe any ambiguity in a constitutional provision to effectuate its purpose. *See Tesco*, 221 S.W.3d at 555; *see also Tilton v. Marshall*, 925 S.W.2d 672, 677 (Tex. 1996) ("The construction of any provision of the Texas Constitution depends upon factors such as the language of the constitutional provision itself, its purpose, the historical context in which it was written, the intention of the framers and ratifiers, the application in prior judicial decisions, the relation of the provision to other parts of the Constitution and the law as a whole, the understanding of other branches of government, the law in other jurisdictions, state and federal, constitutional and legal theory, and fundamental values including justice and social policy.").

The supreme court has recognized that, before a judge can be disqualified based on the judge's former role as counsel in the case, "it is necessary that the judge acted as counsel for some of the parties in [the] suit before him in some proceeding in which the issues were the same as in the case before him." *In re O'Connor*, 92 S.W.3d 446, 448 (Tex. 2002) (quoting *Lade v. Keller*, 615 S.W.2d 916, 920 (Tex. App.—Tyler 1981, no writ)). This holding is consistent with the court's holdings in cases that were decided shortly after the enactment of our constitution in 1876. Such holdings emphasize a narrow definition of "case" that is limited to the particular "cause" that is before the court. *See King v. Sapp*, 2 S.W. 573 (Tex. 1886) (district judge not disqualified as "counsel in the cause" even though he had been counsel in other causes between the defendant and plaintiffs that grew out of the same

16

transaction); *Cullen v. Drane*, 18 S.W. 590, 591 (Tex. 1891) ("It does not appear that Judge Forst had ever been of counsel in the case tried before him.").

In the present case, Judge Yeats had served as counsel in a matter that was filed in a different county more than thirty years before a receivership was requested in Glasscock County. Although there was some commonality between the parties, the Howard County matter involved a different set of mineral interests and constituted a different "cause." Under such circumstances, we have no trouble concluding that Judge Yeats had never been "counsel in the case," and that he was therefore not constitutionally disqualified from rendering judgment in the Glasscock County receivership.

### B. *Insufficient Notice*

Remnant also argues that the original judgment awarding the interests in question to the DeMotte successors is void because the attorney ad litem in Glasscock County, who was assigned to represent the interests of the unknown owners of Mid-Tex, was not given notice of the hearing, in violation of Remnant's right to due process under the Fourteenth Amendment. *See Hamm v. Robinson*, 314 S.W.3d 204, 210 (Tex. App.—El Paso 2010, no pet.) (trial court erred in denying summary judgment on bill of review relating to judgment determining interest in land because movants were never served with process).

The United States Constitution prevents the government from depriving a person of their "property, without due process of law." U.S. CONST. amend XIV, § 1; *see also* TEX. CONST. art I, § 19 ("No citizen of this State shall be deprived of . . . property . . . except by the due course of the law of the land."). As such, any action that may deprive a person of property must be "preceded by notice and opportunity for hearing appropriate to the nature of the case." *Mitchell v. MAP Res., Inc.*, 649 S.W.3d 180, 188–89 (Tex. 2022) (quoting *Mullane v. Cent. Hanover*

*Bank & Tr. Co.*, 339 U.S. 306, 313 (1950)). More specifically, it is "[a]n elementary and fundamental requirement of due process in any *proceeding which is to be accorded finality* is notice reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84 (1988) (quoting *Mullane*, 339 U.S. at 314) (emphasis added). Based on this principle, landowners who do not receive notice of a receivership prior to the rendition of a final judgment may be entitled to a bill of review. *See, e.g.*, *Hamm*, 314 S.W.3d at 210 (bill of review filed by unknown owner following termination of receivership). On the other hand, where a party receives notice of a judgment in time to set it aside, *Peralta* is not applicable. *Dispensa v. Univ. State Bank*, 987 S.W.2d 923, 928 (Tex. App.—Houston [14th Dist.] 1999, no pet.) (*Peralta* not applicable—and judgment was not void—where party received notice of judgment in time to file a motion to set aside); *see Layton v. Nationsbanc Mortg. Corp.*, 141 S.W.3d 760, 764 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.) ("The errors in service did not prevent Nationsbanc from appearing in court to defend itself or deny it the right to fully litigate its rights or defenses in the matter.").

In this case, we have already determined that, although the trial court initially rendered a judgment recognizing the DeMotte successors as owners of the interests in question, Remnant was not bound by or estopped as a result of that judgment. Consequently, Remnant has had an opportunity to fully vet its claims to ownership, and such claims have now been heard both in the trial court and in this court. Under such circumstances, we see no basis on which the trial court's judgment should be considered void as a result of insufficient notice.

## C. *Insufficient Service*

Remnant also argues that Vermillion's attempt to serve Remnant by publication was insufficient to protect its rights to due process.

The means employed for serving a party must be "such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane*, 339 U.S. at 315. Thus, service must be reasonably calculated to inform those who are affected. *Id.*; *Mitchell*, 649 S.W.3d at 189. Where conditions do not reasonably permit such notice, the form chosen must be more likely to result in notice than any other feasible and customary substitute. *Mullane*, 339 U.S. at 315. Thus, a judgement rendered after service by publication may be set aside if the proper party "could have been found with diligent inquiry." *Mitchell*, 649 S.W.3d at 189 (relating to a tax sale).

Remnant asserts that Hoffman's heirs could have been located based on a diligent search. While this may be true, it was also necessary for Vermillion to somehow identify Hoffman as a potential owner of Mid-Tex. The record before us indicates that Hoffman was not named as an owner of Mid-Tex in its corporate charter, and Remnant does not point to any other corporate documentation that reflects Hoffman's ownership. To the contrary, Remnant argues that Hoffman had never been a record owner of the company because of the requirements of his federal probation.

While the responsibilities of due diligence should be taken seriously, we do not believe that such responsibilities require a plaintiff to search the historical record throughout time and speculate about potential claims that are outside formal records of ownership. Additionally, for the reasons given above, Remnant has now had a chance to fully vet its claims to ownership before the trial court and in this court. As

such, we conclude that the trial court's judgment has not been rendered void as a result of defective service.

### D. *Equity*

Remnant also argues that we should reverse the receivership order awarding the mineral interests in question to the DeMotte successors on equity grounds. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 64.004 (West 2008) ("[T]he rules of equity govern all matters relating to the appointment, powers, duties, and liabilities of a receiver and to the powers of a court regarding a receiver."). In support of this argument, Remnant again points to the trial court's failure to provide notice of the initial hearing in which the DeMotte successors were awarded the mineral interests at issue.

Remnant's first three arguments assume that the judgment was void as a result of due process considerations. Generally, such arguments may be raised for the first time on appeal. *See Bird v. Kornman*, 152 S.W.3d 154, 160 (Tex. App.—Dallas 2004, pet. denied) (because the appellate court has no jurisdiction to consider the merits of an appeal from a void judgment, the question of whether a judgment is void may be raised for the first time on appeal without the usual requirements for preservation of error); *see also City of McKinney v. Eldorado Park, Ltd.*, 206 S.W.3d 185, 193 (Tex. App.—Eastland 2006, pet. denied) (complaint that judgment was rendered void due to lack of subject matter jurisdiction could be raised for the first time on appeal).

Remnant's claim for equitable relief is not based on a claim that the receivership order was void. Instead, it is a claim that the receivership order was not equitable. However, Remnant did not present this equity claim in the trial court. "[A] claim or allegation may not be raised for the first time on appeal." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 224 (Tex. 2017) (citing

*Stafford v. Stafford*, 726 S.W.2d 14, 15 (Tex. 1987)); s*ee* TEX. R. APP. P. 33.1(a) ("As a prerequisite to presenting a complaint for appellate review, the record must show that . . . the complaint was made to the trial court by a timely request.").

Remnant does not point to any place in the record where it requested that the trial court vacate its prior order as a result of equitable considerations, or on any other basis. Likewise, no equitable relief with respect to the previous judgment was sought in Remnant's pleadings. Accordingly, Remnant has waived its right to equitable relief.

Furthermore, even if Remnant's request for equitable relief could be considered, we would not be inclined to grant such relief because Remnant—who is unrestrained by any preclusive effects of the trial court's initial judgment awarding ownership to the DeMotte successors—can and has pursued its claims to ownership of Mid-Tex. As such, Remnant has a clear and adequate remedy at law. *See Cardinal Health Staffing Network, Inc. v. Bowen*, 106 S.W.3d 230, 235 (Tex. App.—Houston [1st Dist.] 2003, no pet.) ("[T]he inadequacies of the remedy at law [are] both the foundation of and conversely a limitation on equity jurisdiction.") (quoting *Sisco v. Hereford*, 694 S.W.2d 3, 7 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.)). We overrule Remnant's fifth issue.

*Was Mid-Tex an Alter Ego of Hoffman?*

In its first issue, Remnant argues that it had successfully raised a genuine issue of material fact regarding the identity of the successors-in-interest to Mid-Tex, and that the trial court therefore erred when it granted a summary judgment on Remnant's claims.[9]

---

[9]Remnant does not assign error in connection with the trial court's denial of its own motion for summary judgment.

A. *Summary Judgment*

As noted previously, we review a summary judgment de novo. *See Travelers*, 315 S.W.3d at 862.

A party moving for traditional summary judgment bears the burden of proving that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017). To be entitled to a traditional summary judgment, a defendant must conclusively negate at least one essential element of the cause of action being asserted or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). If the movant initially establishes a right to summary judgment on the issues expressly presented in the motion, then the burden shifts to the nonmovant to present to the trial court any issues or evidence that would preclude summary judgment. *See City of Houston v. Clear Creek Basin Auth.*, 589 S.W.2d 671, 678–79 (Tex. 1979).

"A no-evidence summary judgment is essentially a pretrial directed verdict, and we apply the same legal sufficiency standard in reviewing a no-evidence summary judgment as we apply in reviewing a directed verdict." *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750–51 (Tex. 2003); *Heirs of Del Real v. Eason*, 374 S.W.3d 483, 486 (Tex. App.—Eastland 2012, no pet.). As such, we review the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *King Ranch*, 118 S.W.3d at 751.

"A no evidence point will be sustained when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence

22

offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997) (citing Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX. L. REV. 361, 362–63 (1960)). Thus, "a no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact." *King Ranch*, 118 S.W.3d at 751; *Tex. Petroleum Land Mgmt., LLC v. McMillan*, 641 S.W.3d 831, 840 (Tex. App.—Eastland 2022, no pet.). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *King Ranch*, 118 S.W.3d at 751; *McMillan*, 641 S.W.3d at 840. "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable and fair-minded people to differ in their conclusions.'" *King Ranch*, 118 S.W.3d at 751 (quoting *Havner*, 953 S.W.2d at 711); *McMillan*, 641 S.W.3d at 840.

### B. *Remnant's Claims*

In their intervention, the DeMotte successors established their ownership interest based on the corporate charter of Mid-Tex, which described DeMotte's initial interest in the company. Gardiner and Remnant later asserted a cause of action for trespass to try title, maintaining that, notwithstanding the charter, the corporation was an alter-ego of Hoffman. *See Castleberry v. Branscum*, 721 S.W.2d 270, 272 (Tex. 1986) ("Alter ego applies when there is such unity between corporation and individual that the separateness of the corporation has ceased and holding only the corporation liable would result in injustice.").

Remnant argues that Hoffman's federal probation prohibited him from selling mineral interests. Remant then asserts that, in an effort to avoid the terms of

23

his probation, Hoffman utilized DeMotte and the other purported directors of Mid-Tex as "strawmen," while he operated the company as his alter ego.

C. *Was Mid-Tex an Alter Ego of Hoffman?*

To prevail on its motion for summary judgment, Remnant carried the burden of proving Hoffman's ownership of Mid-Tex as a matter of law. *See* TEX. PROP. CODE ANN. § 22.001 (West 2014) (trespass to try title statute); *Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex. 1994) (plaintiff may establish a trespass to try title by tracing its title back to a "common source" that supports each parties' claim). Likewise, to overcome the motion filed by the DeMotte successors, Remnant was required to establish a genuine issue of material fact regarding its alter ego theory. *See* TEX. R. CIV. P. 166a(c).

The corporate form normally operates to create a legal identity that is separate and apart from the shareholders, officers, and directors of a corporation. *See Castleberry*, 721 S.W.2d at 271 (recognizing that the corporate form serves to insulate shareholders, officers, and directors from liability for corporate obligations). However, even when corporate formalities have been observed and corporate and individual property have been kept separately, Texas courts will sometimes disregard the corporate form where it has been used "as part of a basically unfair device to achieve an inequitable result." *Id.* at 271–72. Alter ego, which posits that an individual is operating a corporation "as the shadow of his personality" is one of several doctrines by which the corporate fiction may be disregarded pursuant to this general purpose. *Clement v. Blackwood*, No. 11-16-00087-CV, 2018 WL 826856, at *5 (Tex. App.—Eastland Feb. 8, 2018, pet. denied) (mem. op.); *see Castleberry*, 721 S.W.2d at 272. To determine whether an individual is operating an entity only "as the shadow of his personality," the court considers the total dealings of the entity and the individual, including the amount of financial interest, ownership, and control

24

the individual maintains over the corporation; the degree to which corporate formalities have been followed; and whether the individual's property has been kept separately or the corporation was used for personal purposes. *Clement*, 2018 WL 826856, at \*5 (citing *Seghers v. El Bizri*, 513 F. Supp. 2d 694, 703 (N.D. Tex. 2007) (applying Texas law)); *see also Wilson*, 305 S.W.3d at 70–71 (owners' failure to adhere to corporate formalities provided some evidence in support of reverse-piercing theory).[10]

For two reasons, we have concluded that Remnant failed to raise a genuine issue of material fact in support of Hoffman's ownership of Mid-Tex.

First, the evidence offered by Remnant is too weak and circumstantial to support any inference that Mid-Tex was Hoffman's alter ego. There is no direct evidence showing that Hoffman was the "owner" of Mid-Tex. In support of its alter-ego theory, Remnant points to Hoffman's indictment for mail fraud, which it claims includes a "finding" that Hoffman was "the owner, manager and probate in good faith of . . . Mid-Tex Corporation." However, the indictment does not state that Hoffman owned Mid-Tex. Rather, it states that, as a part of his mail-fraud scheme, Hoffman had *claimed* to be the owner of Mid-Tex. The indictment reads—in relevant part—as follows:

> The Grand Jurors . . . present, that . . . HENRY H. HOFFMAN . . . did devise a scheme . . . by means of false and fraudulent pretenses, representations and promises . . . to the effect that he . . . was the owner, manager and promoter in good faith of . . . Mid-Tex Corporation.

---

[10]Although alter ego is normally a means by which individuals are liable for the debts of the corporation, it may also be applied to treat the corporation and individual as "one and the same." *Clement*, 2018 WL 826856, at \*5 (quoting *Zahra Spiritual Trust v. United States*, 910 F.2d 240, 243–44 (5th Cir. 1990) (applying Texas law)); *see also Wilson v. Davis*, 305 S.W.3d 57, 70 (Tex. App.—Houston [1st Dist.] 2009, no pet.).

Remnant presents no other direct evidence of ownership. For example, Remnant does not show that Hoffman provided the funds that were used to purchase the properties that were owned by Mid-Tex, nor is there direct evidence that he was controlling the company from behind the scenes. *See Clement*, 2018 WL 826856, at *5; *Seghers*, 513 F. Supp. 2d at 703. Furthermore, there is no direct evidence that Hoffman failed to follow corporate formalities by comingling personal and corporate property. *See Clement*, 2018 WL 826856, at *5; *Seghers*, 513 F. Supp. 2d at 703.

Remnant's circumstantial evidence is likewise too weak to support an inference that Mid-Tex was Hoffman's alter ego. While there is evidence that Hoffman was involved in the operation of Mid-Tex (for example, by serving as a trustee and/or officer, or notarizing documents on its behalf), such evidence does not support an inference that he was controlling any of the operations of the company, much less that he was somehow using the company as his alter ego.

In short, we have concluded that evidence of Hoffman's fraudulent claims to ownership of Mid-Tex, combined with other circumstantial evidence that he was involved in the operation of the company, does not comprise a scintilla of evidence that Mid-Tex was his alter ego.

Second, even if we were convinced that Hoffman somehow funded and controlled Mid-Tex from behind the scenes, it would be improper to apply the alter ego doctrine under these circumstances. In this regard, before disregarding corporate separateness, there must be evidence that the corporate form has been abused, such as for the purpose of shielding "fraud, evasion of existing obligations, circumvention of statutes, monopolization, criminal conduct, and the like." *SSP Partners v. Gladstrong Invs. (USA) Corp.*, 275 S.W.3d 444, 455 (Tex. 2008).

In this case, Remnant invited the trial court to apply the doctrine of "alter ego" not for the purpose of mitigating fraud, but for the stated purpose of recognizing and

then advancing Hoffman's criminal schemes. Rather than asking the court to remedy Hoffman's fraud, Remnant asked the trial court to reward it.[11] We do not believe that the alter ego theory was intended to be used in this manner. "The law abhors fraud; and will neither lend its aid to enforce a fraudulent agreement, nor to relieve a party from the consequences of his own fraudulent act or deed." *McClenny v. Floyd's Adm'r*, 10 Tex. 159, 166 (1853).

Remnant also argues that summary judgment in favor of the DeMotte successors was improper because "[t]here is at least a genuine issue of material fact as to whether [the DeMotte successors] are successors-in-interest to Mid-Tex." However, plaintiffs that assert an action for trespass to try title must recover on the strength of their own title. *Rogers*, 884 S.W.2d at 768; *see also UpCurve Energy Partners, LLC v. Muench*, 661 S.W.3d 907, 917 (Tex. App.—El Paso 2023, no pet.) ("Ultimately, a plaintiff . . . must recover upon the strength of his or her own title, *not on the weakness of the title of his or her adversary*." (emphasis added)). As such, the DeMotte successors were not strictly required to establish their own title as a matter of law in order to secure a summary judgment on Remnant's claim for trespass to try title. Nevertheless, the evidence of DeMotte's record ownership of Mid-Tex was sufficient to establish the DeMotte successors' title over and against that of Remnant as a matter of law.

Because the trial court did not err when it granted summary judgment against Remnant on the issue of Hoffman's ownership, we overrule Remnant's first issue to the extent that it maintains that the summary judgment was improper.

---

[11]Remnant doesn't merely acknowledge that Hoffman's scheme was in violation of his federal parole. Instead, the alleged parole violation is the central allegation in Remnant's theory of the case.

*Final Judgment?*

In its first issue, Remnant also argues that the trial court's judgment failed to determine all of the interests in dispute, and the judgment is therefore "erroneously final." Additionally, in its third issue, Remnant argues that the trial court erred by granting relief that was not requested by the DeMotte successors in their motion for summary judgment.

In their motion for summary judgment, Gardiner and Remnant sought an order declaring that Hoffman was the rightful owner of Mid-Tex in its entirety. By contrast, the trial court's orders, which addressed only the interests that were claimed by the DeMotte successors, disposed of only 48.4% of the interests formerly held by Mid-Tex. Remnant argues that, although the trial court's order purports to be final, it failed to identify the ownership of the remaining 51.6% interest that was formerly held by Mid-Tex, and that it therefore did not accord full relief to the parties. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) ("[I]f a defendant moves for summary judgment on only one of four claims asserted by the plaintiff, but the trial court renders judgment that the plaintiff take nothing on all claims asserted, the judgment is final—erroneous, but final.").

While it is true that the remaining 51.6% interest is undetermined following the trial court's rendition of judgment, the judgment is final. In ruling on the pleadings and related motion filed by Gardiner and Remnant, the trial court was not tasked with identifying the specific owner(s) of the remaining 51.6% interest. Rather, it was tasked with determining whether Gardiner and Remnant were specifically the owners of such interest. In that regard, the trial court's judgment plainly rejected their claims and determined that they were not. Accordingly, we conclude that the trial court's judgment was final, just as it purported to be. *See Guardianship of Jones*, 629 S.W.3d at 925.

We also reject Remnant's argument that the trial court's judgment improperly awards 100% of the interest formerly held by Mid-Tex to the DeMotte successors, granting more relief than was requested. As Remnant observes, the judgment merely indicates that the DeMotte succesors own "an undivided interest" in the property in question. It does not attempt to specify the exact nature of the interest, which is already described in the trial court's order relating to the DeMotte successors' plea in intervention.

We overrule Remnant's third issue, as well as the remainder of Remnant's first issue.

*Unassigned Argument*

Remnant has presented an argument in its brief that is not in support of any of its five issues. Specifically, Remnant contends that the DeMotte successors' challenge to Remnant's claim under the Uniform Declaratory Judgment Act is "of no consequence" because Remnant also pleaded a claim for trespass to try title. *See* CIV. PRAC. & REM. § 37.004 (West 2020); PROP. § 22.001; *Teon Mgmt., LLC v. Turquoise Bay Corp.*, 357 S.W.3d 719, 723–29 (Tex. App.—Eastland 2011, pet. denied) (addressing the distinction between a trespass-to-try-title action and a declaratory-judgment action). Because the resolution of this case is not dependent on the procedural vehicles utilized by Remnant, its "of no consequence" contention about a declaratory judgment claim is correct.

*Conclusion*

The trial court properly concluded that, as a matter of law, Gardiner and Remnant have no evidence that Hoffman was ever an owner of Mid-Tex, and that therefore they have no claim to the interests at issue. Likewise, the trial court properly concluded that, as a matter of law, the DeMotte successors own a portion of the interest formerly held by Mid-Tex.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

CHIEF JUSTICE


January 16, 2025

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.